**CAROL A. SOBEL** SBN 84484
**COLLEEN M. MULLEN** SBN 299059
**JUSTINE M. SCHNEEWEIS** SBN 305672
**LAW OFFICE OF CAROL A. SOBEL**
3110 Main St., Ste. 210
Santa Monica, CA 90405
T: (310) 393-3055; F. 310 399-1854
E. carolsobel@aol.com
E. mullen.colleen1@gmail.com
E. Justine.schneeweis@gmail.com

**JOHN P. GIVENSBN** 269787
2461 Santa Monica Boulevard, #438
Santa Monica, CA  90404
T. 310 471-8485
E. john@johngiven.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENICE JUSTICE COMMITTEE, an unincorporated association; and PEGGY KENNEDY, an individual;<br><br>　　　　Plaintiffs,<br>　　vs.<br>CITY OF LOS ANGELES; and DOES 1-10,<br>　　　　Defendants. | Case No.:   cv-16-01115<br><br>**COMPLAINT: CIVIL RIGHTS**<br><br>**42 U.S.C. § 1983, FIRST AMENDMENT**<br><br>**CALIFORNIA CONSTITUTION ARTICLE I, §§ 2,3**<br><br>**CALIFORNIA CIVIL CODE § 52.1** |

1

COMPLAINT

**JURISDICTION AND VENUE**

1. This is an action for injunctive and declaratory relief pursuant to 42 U.S.C. § 1983, based upon ongoing violations by the Defendants of the rights secured to Plaintiffs by the First and Fourteenth Amendments of the United States Constitution. Jurisdiction exists based on 28 U.S.C. §§ 1331 and 1343, in that this case is brought pursuant to 42 U.S.C. § 1983 and raises questions of federal constitutional law under the First and Fourteenth Amendments. The court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367, in that it forms part of the same case or controversy as the federal claim.

2. Venue is proper in the Central District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims herein occurred in this District.

3. This Court has the authority to grant the requested relief pursuant to 28 U.S.C. §§ 1331 and 1343.

**INTRODUCTION**

4. Plaintiffs bring this action against the City of Los Angeles to enjoin the City from (1) prohibiting individuals from engaging in activities that constitute core political speech on the Boardwalk after sunset and (2) applying "vending" restrictions to First Amendment protected solicitation, including donations and contributions to support core petitioning activity. The Venice Boardwalk is described by the City as a "traditional public forum for . . . free speech activity." LAMC § 42.15(B)(2). The property now known as the Venice Boardwalk was given to the City at the turn of the last century by developer Abbott Kinney. It was deeded to the City and restricted in perpetuity as a public sidewalk, a quintessential public forum under First Amendment jurisprudence.

5. The City has enacted a regulation scheme for "vending" and "performing" on the Venice Boardwalk for the stated purpose of restricting the proliferation of commercial vending on the west side of the Boardwalk. The City's policy is codified in Los Angeles Municipal Code § 42.15, which has been amended on at least three

different occasions in response to legal challenges. Section 42.15 was last amended in 2011.The City has construed the ordinance in a manner that directly and significantly proscribes core First Amendment activity in an archetypal public forum.  The City's unlawful actions result both from the plain language of the ordinance, the implement regulations, if any, and the failure to train its employees on the mandates of the First Amendment and the protections it provides to the precise activities Plaintiffs have been told are not permitted at the time and place or manner that they seek to exercise their First Amendment right.

    6. The so-called "sunset provisions" contained in LAMC § 42.15 prohibit any expressive activity on the west side of the Venice Boardwalk after sunset. The rest of the Boardwalk, however, remains open to shoppers, joggers, strollers, and restaurant patrons.  Because LAMC § 42.15 imposes a blanket ban on all expressive activity in a quintessential public forum when it is open to the public for non-speech activities, it is unconstitutional. It is overly broad and burdens substantially more speech than is necessary.

    7. Plaintiff Peggy Kennedy ("Ms. Kennedy") is a third generation Venetian and a life-long activist, who organizes on issues concerning the local community, including opposition to police misconduct and advocacy on behalf of the homeless community in the greater Los Angeles area, and particularly in Venice Beach. To facilitate this work, Ms. Kennedy co-founded the Venice Justice Committee ("Justice Committee" or "VJC") to help document violations of, and organize against, human and civil rights violations taking place in the Venice area. Because the organization does not have significant financial resources, Ms. Kennedy relies on traditional forms of political speech to communicate the Committee's messages, including handing out leaflets to inform the community of upcoming legal clinics to represent homeless individuals facing "quality-of-life" citations and beach sweeps impacting the property of homeless individuals by City sanitation workers, as well

as protests against police conduct toward homeless individuals along the Venice Boardwalk.

8. One of the issues of immediate concern to the Venice community is the recent killing of two homeless men on or near the Boardwalk. Ms. Kennedy, along with other members of the Venice Justice Committee, want to leaflet on this issue and engage in core political speech with members of the community and others who frequent the Boardwalk. Through this type of work, Plaintiffs facilitate public discourse and work to effectuate political change in how the police interact with the local homeless community. The only effective means for Plaintiffs to reach the people in Venice with their message is to do outreach on the Venice Boardwalk. The Boardwalk has long been recognized by the City as a traditional free speech forum and a central gathering place for local residents, particularly in the evenings when many people walk on the Boardwalk after work and frequent the shops, restaurants and bars on the east side of the Boardwalk.

9. Plaintiffs' expressive activity constitutes core political speech at the heart of the protection provided by the First Amendment. Yet, on at least two occasions, the Los Angeles Police Department ("LAPD") threatened Ms. Kennedy with citations and arrests for engaging in such activity. On both occasions, Ms. Kennedy set up a small folding card table in a designated vending spot on the west side of the Venice Beach Boardwalk in the late afternoon or early and evening and was present shortly after sunset. Her goal was to engage with members of the public who were attracted by the various signs she displayed, present informative materials about legal clinics that provide assistance to homeless individuals cited for "quality-of-life" crimes, find volunteers to serve as public observers for the weekly beach sweeps, and organize support for demonstrations against the recent tragic killings of several local, homeless individuals in Venice.

10. At the time that Ms. Kennedy set up her small folding table, the Boardwalk was brightly lit and filled with passersby. Ms. Kennedy did not block anyone's

1  passage.  Those who wanted to speak with her could step to the west side of the
2  Boardwalk, out of the way of other pedestrians.  Other than the LAPD officers, no
3  city employee was in the vicinity the entire time she was on the Boardwalk after
4  sunset.

5      11.  Ms. Kennedy also placed a small can on the table for donations. Despite Ms.
6  Kennedy's assertions that her activity was protected by the First Amendment, LAPD
7  officers threatened her with arrest for "vending" after sunset if she continued to seek
8  donations.

## PARTIES

10      12. The Venice Justice Committee ("VJC" or "Justice Committee") is an
11  unincorporated organization in Los Angeles that fights against civil and human
12  rights violations mostly in the Venice and Santa Monica areas. Its work primarily
13  focuses on police interactions with the homeless community. In this vein, the Justice
14  Committee helps organize and facilitate monthly legal clinics for homeless
15  individuals facing "quality of life" tickets.  The Justice Committee also coordinates
16  special legal intake clinics following a significant police action directed at the
17  homeless community; documents any illegal property seizures or harassment during
18  the City's weekly beach sweeps along the Boardwalk; organizes protests against
19  police mistreatment of the homeless; conducts "Know Your Rights" programs; and
20  generally educates the local community about the broader struggles facing the
21  homeless community. The LAPD's unconstitutional enforcement of the sunset
22  provisions has prevented the Justice Committee from engaging in protected political
23  speech on the Boardwalk. As a result, the Justice Committee has been diminished in
24  its efforts to disseminate its message to its targeted audience of local residents
25  frequenting the Boardwalk after sunset. The Justice Committee brings this action on
26  behalf of itself and its members.

27      13.  Ms. Kennedy is a co-founder of the Venice Justice Committee.  She regularly
28  engages in expressive activity in the Venice community.  On at least two occasions

in recent months, she has been threatened with citation or arrest if she did not stop engaging in core political activity on the Boardwalk after sunset, including setting up a small table with leaflets and other expressive materials and engaging in solicitation of donations to support the work of the Venice Justice Committee.

14. Defendant City of Los Angeles is, and at all times relevant herein was, a municipal entity duly organized under the laws of the State of California, with the capacity to sue and be sued. The Los Angeles Police Department is a subdivision of the City of Los Angeles. The City of Los Angeles is sued for its unconstitutional "sunset provisions" contained in LAMC § 42.15 and for its unlawful restrictions on solicitation of donations.

15. Does 1-10 are other police officers involved in ordering Plaintiff Kennedy to stop her expressive activity under threat of citation or arrest, as complained of in this action. One or more of the DOE defendants threatened Ms. Kennedy with citation or arrest if she did not cease her activity, including directing her to cease unlawful "vending" by soliciting donations. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

16. Each of the defendants, including Defendant DOES 1 through 10, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, or acting jointly, or conspiring with others who did so; by authorizing, acquiescing in, or setting in motion plans or actions that led to the unlawful conduct; and by failing to take action to prevent the unlawful conduct.

17. In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

18. In doing the acts alleged herein, Defendants, and each of them, acted pursuant to the policies, practices and customs of Defendant City, as set forth in the

Los Angeles Municipal Code §42.15 and the implementing policies of the Los Angeles Police Department, if any, and other departments within the Defendant City.

19. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

20. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other defendants.

## THE CHALLENGED ORDINANCE

21. Los Angeles Municipal Code § 42.15(E)(9) states that: "No person shall set up or set down items in, take down items from or block, or attempt to reserve a Designated Space between Sunset and 9:00 a.m."

22. Los Angeles Municipal Code § 42.15(F)(1) prohibits "vending" in any area on the west side of the Boardwalk outside of a Designated Space. LAMC §42.15(F)(1)(b) permits individuals to "engage in traditional expressive speech and petitioning activities" outside of a designated vending/performing space, but expressly excludes "vending" activity.

23. Los Angeles Municipal Code § 42.15 (A)(6) defines the term "Donation" as: "A gift; a voluntary act which is not required and does not require anything in return."

## STATEMENT OF FACTS

24. On or about February 2, 2015, Ms. Kennedy set up a small portable folding table in a designated vending spot shortly after sunset to table for the Venice Justice Committee. In early February, sunset occurred at approximately 4:20 p.m. At that time, all of the stores and restaurants on the east side of the Boardwalk were open for business and the Boardwalk was brightly lit.

25. Ms. Kennedy utilized the table to display signs, hold petitions people could sign, collect donations, and provide informational pamphlets. Shortly after Ms.

Kennedy set up her table, two LAPD officers approached Ms. Kennedy. The officers informed Ms. Kennedy that she could not "vend" in a designated spot after sunset. Ms. Kennedy explained that she was not selling or "vending" anything, just collecting donations from individuals wanting to support the work of the Venice Justice Committee.

26. In response to Ms. Kennedy's statement, the officers stepped back and one began using his cell phone. After a brief phone call, the officers returned to Ms. Kennedy and informed her that, being on the west side of the Boardwalk after sunset to engage in expressive activity was a "gray area;" however, because she was soliciting donations, she was illegally "vending" after sunset in violation of the LAMC. On information and belief, the officers spoke to their immediate supervisor, who confirmed the officers' mistaken belief that collecting donations for a political cause constituted "vending." The officers then informed Ms. Kennedy that she could continue to disseminate information from her table this time, but threatened Ms. Kennedy with a citation if she did not immediately stop seeking donations. Ms. Kennedy acquiesced, and did not attempt to set up another table in the afternoon for several months.

27. On September 25, 2015, Ms. Kennedy again set up a small folding table displaying a sign that read, "Stop Killing of Homeless" in an allotted vending spot shortly after sunset. The table also held informational pamphlets, several petitions, and a flyer about an upcoming march and protest to take place the next day. The protest concerned the recent deaths of Brendon Glenn and Jason Davis, two homeless individuals killed by the LAPD in Venice on or near the Boardwalk, and Jascent-Jamal Lee Warren, a homeless individual killed after an altercation broke out in front of a local hotel along the Boardwalk.

28. On September 25, 2015, sunset occurred at 6:46 p.m., just as many local residents were coming out for dinner, shopping or taking a stroll on the Boardwalk.

29. Ms. Kennedy also placed a small cardboard box on the table to collect donations for the Venice Justice Committee. As before, Ms. Kennedy did not provide any food, goods, merchandise, or services in exchange for any donations she received. She did not charge passers-by for the informational pamphlets or flyers displayed on her table. Rather, Ms. Kennedy simply solicited donations from individuals who supported the Justice Committee's work on behalf of the homeless community.

30. Around 7:00 p.m., Officers Bridges and Lissner of the LAPD approached Ms. Kennedy at the table. They informed Ms. Kennedy that she could not be in a vending space on the boardwalk after sunset. Instead, they told her that she could only engage in expressive activity on the Boardwalk, including collecting petition signatures and passing out flyers, if she kept moving, walking up and down the middle of the Boardwalk. The officers expressly threatened Ms. Kennedy with a citation unless she acquiesced. Wanting to avoid a criminal charge, Ms. Kennedy left. It was not feasible for her to engage members of the public, carry the literature she makes available, and solicit donations if she had to keep moving at all times.

31. Defendants' unlawful actions stem from the overly-broad prohibitions against expressive activity after sunset contained in § 42.15. As part of the City's regulation of the Boardwalk, 205 "Designated Spaces" have been marked along the Boardwalk where "[p]ersons can engage in traditional expressive speech and petitioning activities, and can "vend. . ." LAMC § 42.15(D)(1). Such regulations are designed, in significant part, to "preserve the Boardwalk's rich history of fostering . . . free speech activity." LAMC § 42.15(D). Despite this explicit statement of purpose, the very same ordinance prohibits any activity, including core political speech and solicitation activities, along the Boardwalk after sunset.

32. LAMC § 42.15(E)(9) makes no differentiation between vending, on the one hand, or engaging in core political speech. Because of this section, Plaintiffs are completely prohibited from tabling, leafleting, soliciting donations, or even speaking

to passers-by if Plaintiffs do so by standing on the west side of the Boardwalk after sunset. Thus, this section burdens substantially more speech than is necessary to facilitate the City's purported interests.

33. Moreover, because Defendants by definition equate "soliciting" for political donations with "vending," Plaintiffs are also prohibited from seeking support for their cause outside of the Designated Spaces at any time of the day or evening. See LAMC Section 42.15(F)(1) (regulating activity outside of the Designated Spaces); LAMC § 42.15(F)(1)(b) (prohibiting all "vending" outside of a designated space); and, LAMC § 42.15(D)(1) (authorizing "vending" only of "newspapers, leaflets, pamphlets, bumper stickers, patches and/or buttons" by persons engaged in "traditional expressive speech and petitioning activities" in Designated Spaces).

34. Together, both provisions prohibit Plaintiffs from engaging in the most fundamental First Amendment activity after sunset in a quintessential and long-standing public forum in the City: operating together, §42.15(E)(9) and §42.15(F)(1)(b) foreclose a substantial amount of constitutionally protected expression.

35. Plaintiffs want to continue to table, inform the public, and solicit donations on the Boardwalk after sunset. That is the only opportunity Plaintiffs have to reach local residents and other individuals frequenting the many shops, restaurants and bars in the area, walking their dogs after work, or, going for an evening stroll. Plaintiffs want to engage the local residents in a political discussion about issues that highly impact the immediate community. There is no adequate alternative for Plaintiffs to reach this audience and communicate their message.

36. Plaintiffs are concerned that they will be cited or arrested by the LAPD, as threatened in previous encounters. Defendants' unlawful policies and actions have and will continue to impact directly Plaintiffs' ability to engage in core political speech in a quintessential public forum in the City of Los Angeles.

## MONELL ALLEGATIONS

37. Defendant City has enacted an unlawful ordinance, restricting core speech and petition activity in a quintessential public forum. The policy of the City, codified in Municipal Code section 42.15, is the source and cause of Plaintiffs' constitutional and statutory injuries.

38. Despite a well-established body of jurisprudence regarding these fundamental First Amendment rights, the City has failed to promulgate adequate policies and train its employees on the lawful application of the ordinance.

39. The City is responsible for the injuries suffered by Plaintiffs, and likely to be suffered by Plaintiffs in the future both directly as a result of its unlawful policies and training, and on the basis of respondeat superior pursuant to California constitutional and statutory violations.

## NO ADEQUATE REMEDY AT LAW

40. Plaintiffs are informed and believe that Defendants believe that LAMC § 42.15 is lawful as applied to Plaintiffs' intended expressive activity. Plaintiffs fundamentally disagree with this position by the Defendants. A dispute exists between the parties concerning the constitutionality of the challenged provisions of the Los Angeles Municipal Code. On this basis, Plaintiffs allege that unless restrained from doing so, Defendants will continue to engage in said wrongful conduct for which Plaintiffs have no adequate remedy at law. Thus, Plaintiffs seek (1) an injunction to enjoin Defendants from enforcing LAMC § 42.15(E)(9) against core political speech and (2) a declaration that soliciting passersby for donations to support a political cause is not commercial vending and, therefore, exempt from regulation pursuant to LAMC § 42.15's prohibitions.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

41. Plaintiffs timely filed a tort claim with the City of Los Angeles, which has since been denied.

## FIRST CAUSE OF ACTION
### Violation of First Amendment (42 U.S.C. § 1983)

42. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth here.

43. Plaintiffs advocate for the homeless community, promote policy that challenges the way the Los Angeles Police Department interacts with homeless individuals and communities of color, document civil and human rights violations in Venice, and engage and educate the community about important social issues directly impacting Venice residents, whether housed or unhoused. Passing out flyers and informational pamphlets, displaying signs, gathering signatures on various petitions, collecting donations, discussing these issues with local residents and tourists alike, and organizing protests and demonstrations against police brutality are critical components to their work. This expressive activity epitomizes core political speech. A complete ban on expressive activity on the west side of the Boardwalk after sunset by stationary speakers violates Plaintiffs' rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.

44. Soliciting donations in conjunction with core expressive activity is a fundamental First Amendment right. Defendants have applied the definition of "vending" to apply to all "solicitation."  As such, Defendants' enforcement of a blanket prohibition against "vending" after sunset, that includes quintessential expressive activity, constitutes an unreasonable and unconstitutional interference with rights of free speech guaranteed under the First and Fourteenth Amendments to the United States Constitution.

45. As a direct and proximate result of Defendants' actions, Plaintiffs experienced a constitutional deprivation. Plaintiffs are informed and believe that unless restrained from doing so, Defendants will continue to engage in said wrongful conduct for which Plaintiffs have no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Violation of California Constitution Art. I, §§ 2,3

46. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth here.

47. Defendants' acts violated Plaintiffs' right to freedom of expression under the California Constitution. Defendants' unlawful policies prevented Plaintiffs from engaging in core expressive activity with the public in a quintessential public forum on issues that fundamentally impact the local community.

48. Moreover, Defendants' acts violated Plaintiffs' right to petition and prevented Plaintiffs from gathering support for their protests against police action in the community, as well as gathering signatures on petitions.

49. As a direct and proximate result of Defendants' actions, Plaintiffs experienced a constitutional deprivation. Plaintiffs are informed and believe that unless restrained from doing so, Defendants will continue to engage in said wrongful conduct for which Plaintiffs have no adequate remedy at law. As such, Plaintiffs are entitled to injunctive relief.

## THIRD CAUSE OF ACTION
### Violation of Civil Rights: Interference by Threat, Intimidation or Coercion
### California Civil Code § 52.1

50. Plaintiffs reallege and incorporate the allegations set forth in the foregoing paragraphs as though fully set forth herein.

51. Defendants' agents and employees have used threats of citation or arrest and intimidation to coerce Plaintiffs to forego rights secured by the Constitution of the United States, the Constitution of the State of California, and the statutory laws of the State of California.

52. Plaintiffs are entitled to an injunction pursuant to California Civil Code § 52.1. Plaintiffs are informed and believe that unless restrained from doing so,

Defendants will continue to engage in said wrongful conduct for which Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs therefore respectfully request that the Court enter an order providing:

1. a declaration that Plaintiffs' constitutional rights were violated in the incidents described in the Complaint;
2. a declaration that requesting donations to support core political activity does not constitute as vending;
3. an injunction enjoining the City of Los Angeles from enforcing "sunset" provisions in LAMC § 42.15 prohibiting all core political speech on the Boardwalk after sunset, the type of expressive activity at the core of the protection provided by the First Amendment;
4. reasonable attorneys' fees and costs; and
5. any other relief that the Court deems just and proper.

DATED:                  Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL
  /s/ Colleen M. Mullen
By: COLLEEN M. MULLEN
Attorneys for Plaintiffs