1
**CAROL A. SOBEL**   SBN 84483
**COLLEEN M. MULLEN** SBN 299059
2
**JUSTINE M. SCHNEEWEIS** SBN 305672
**LAW OFFICE OF CAROL A. SOBEL**
3
3110 Main Street, Suite 210
Santa Monica, California 90405
4
T. 310 393 3055
E. carolsobel@aol.com
5
E. mullen.colleen1@gmail.com
E. Justine.schneeweis@gmail.com
6

7
**JOHN P. GIVEN**   SBN 269787
2461 Santa Monica Boulevard, #438
8
Santa Monica, California 90404
T.  310 471-8485
E. john@johngiven.com
9

Attorneys for Plaintiffs
10

11
### UNITED STATES DISTRICT COURT

12
### IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14
VENICE JUSTICE COMMITTEE, et al.,

15
                    Plaintiffs,

v.
16

CITY OF LOS ANGELES, et al.,
17

                    Defendants.
18

19

20

21

22

23

24

25

26

27

28

Case No. cv-16-01115 DDP (SSx)

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

Date: August 1, 2016
Time: 10:00 a.m.
Ctrm: 3

Concurrently filed with Plaintiffs' Request for Judicial Notice

**TABLE OF CONTENTS**

I.    INTRODUCTION                                                          1

II.   THE STANDARD ON MOTION TO DISMISS                                     2

III.  STATEMENT OF FACTS                                                    3

IV.   PLAINTIFFS HAVE ALLEGED A PLAUSIBLE CLAIM THAT                        5
      LAMC §42.15 UNCONSTITUTIONALLY RESTRICTS THEIR
      CORE SPEECH IN A QUINTESSENTIAL PUBLIC FORUM

      A.   The Nature of the Forum                                          5

      B.   Available Space on the Boardwalk                                 6

      C.   LAMC §42.15 is Not a Reasonable Time, Place or Manner            8
           Regulation

           1.   The requirements of a reasonable time, place or manner     8
                regulation

           2.   The "sunset" restriction in LAMC §45.12 is not narrowly-   9
                tailored

                a.   The "sunset" restriction on core expressive activity in   10
                     "Designated Spaces" is not narrowly-tailored to
                     further the asserted governmental interest in
                     "cleaning" for the next day

                b.   The restrictions on core expressive activity in        12
                     "Designated Spaces" after sunset are not narrowly-
                     tailored to further any of the other governmental
                     interests asserted in the ordinance

           3.   LAMC §45.12 does not allow ample alternatives after        15
                sunset

      D.   The Restriction on Solicitation of Donations is Content-based   17

           1.   Content-based regulations of First Amendment expression   17

           2.   The ordinance is not narrowly tailored                     19

           3.   The bar on solicitation does not allow ample alternatives  20

V.    PLAINTIFFS STATE A CLAIM UNDER CAL. CIV. CODE §52.1                   20

VI.   CONCLUSION                                                            23

# TABLE OF AUTHORITIES

**Federal cases:**

*ACLU of Idaho v. City of Boise*, 998 F.Supp.2d 908 (D.Id. 2014)                    2,18,19

*ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092 (9th Cir. 2003)              17,18

*ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006)               5,9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)                                                         2

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007)                                        2

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009)                              10,12,15

*Canatella v. State of California*, 304 F.3d 843 (9th Cir. 2002)                          3

*Center for Bio-Ethical Reform v. Los Angeles County Sheriff's Department*,    11
533 F.3d 780 (9th Cir. 2008)

*City of Houston, Tex. V. Hill*, 482 U.S. 451 (1987)                                         17

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,             11,12
657 F.3d 936 (9th Cir. 2011)

*Cornelius v. NAACP Legal Defense & Education Fund, Inc.,*                           19
473 U.S. 788 (1985)

*CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1078 (9th Cir. 2015)            4

*Dowd v. City of Los Angeles*, 2013 U.S. Dist. LEXIS 111435 (C.D. Cal. 2013) 4,14

*Edwards v. City of Coeur d'Alene*, 262 F.3d 856 (9th Cir. 2001)                       18

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998)                              9,13

*Gant v. City of Los Angeles*, 772 F.3d 608 (9th cir. 2014)                              23

*Grossman v. City of Portland*, 3 F.3d 1200 (9th Cir. 1994)                              9

*Heffron v. International Soc. For Krishna Consciousness, Inc.*,                         8
452 U.S. 640 (1981)

*Hill v. Colorado*, 530 U.S. 703 (2000)                                                         5

*International Society for Krishna Consciousness v. Lee*, 505 U.S. 672 (1992)  5,14

*Long Beach Area Peace Network v. City of Long Beach*,                               15
522 F.3d 1025 (9th Cir. 2009)

*Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015)                          20.21

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012)                            8

*McCullen v. Coakley*, 134 S.Ct. 2518 (2014) — *passim*

*McKibben v. McMahon*, 2015 WL 10382396 (C.D. Cal. 2015)
EDCV 14-02171 JGB (SPx) — 21,23

*Meyer v. Grant*, 486 U.S. 414 (1988) — 16

*N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984) — 6

*Perry v. Los Angeles Police Dept.*, 121 F.3d 1365 (9th Cir. 1997) — 5

*Planet Aid v. City of St. Johns, MI*, 782 F.3d 3108 (6th Cir. 2014) — 18

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) — 6,19

*Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015) — 17

*Richardson v. City of Antioch*, 722 F.Supp.2d 1133 (N.D. Cal. 2010) — 22

*Riley v. National Federation of the Blind*, 487 U.S. 781 (1988) — 12,14

*S.O.C., Inc. v. County of Clark*, 152 F.3d 1136 (9th Cir. 1998) — 9

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002) — 12

*Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994) — 10

*United states v. Salerno*, 481 U.S. 739 (1987) — 17

*Valle del Sol v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) — 2

*Village of Hoffman Estates v. Hoffman Estates, Inc.*, 455 U.S. (1982) — 17

*Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980) — 18,19

*Virginia v. Hicks*, 539 U.S. 113 (2003) — 17

*Winarto v. Toshiba America Electronic Components, Inc.*, 272 F.3d 1276 (9th Cir. 2001) — 22

**State cases**

*Allen v. City of Sacramento*, 234 Cal.App.4th 41 (2015) — 20,21

*Boccato v. City of Hermosa Beach*, 29 Cal. App. 4th 1797 (1994) — 22

*Stamps v. Superior Court*, 136 Cal.App.4th 1441 (2006) — 22

*Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) — 22

1

2
**Federal Constitution and Statutes**

3   First Amendment ................................................................... *passim*

4   F.R.Civ.P. 8(a) ......................................................................... 2

5   F.R.Civ.P. 12(b)(6) .................................................................. 2

6   FRE 201 .................................................................................. 16

7

8
**State Constitution and Statutes**

9   Cal. Civ. Code §51.7 ............................................................. 22

10  Cal. Civ. Code §52.1 .............................................. 20,21,22,23

11

12
**Municipal Ordinances**

13  LAMC §42.15 ........................................................... *passim*

14  LAMC §42.15.A.10 ............................................................. 7,16

15  LAMC §42.15.B.3 .................................................................. 12

16  LAMC §42.15.B.4 .................................................................. 12

17  LAMC §42.15.B.4.(b)-(I) ........................................................ 13

18  LAMC §42.15.D. ................................................................. 6,12

19  LAMC §42.15.D.1. ................................................................... 6

20  LAMC §42.15.E.5 .................................................................. 14

21  LAMC §42.15.E.9 .................................................................. 11

22  LAMC §42.15.F.(1)(a) .............................................................. 6

23  LAMC §42.15.F.(1)(b) .............................................................. 6

24  LAMC §42.15.F(c)(2)(b) ........................................................... 8

25  LAMC §42.15.G. ...................................................................... 7

26  LAMC §63.44 ........................................................................... 1

27

28

## I.   INTRODUCTION

Plaintiffs challenge the application of LAMC §42.15 to their core speech activities in an archetypal public forum, the Venice Boardwalk.[1]  Plaintiffs are long-time community activists in the Venice section of the City of Los Angeles.  Among the issues on which they advocate are police misconduct and homelessness, two matters at the center of the City's current political debate.  Complaint at ¶7.  Last year, two homeless men were killed by the Los Angeles Police Department in Venice.  One, Brendan Glenn, was shot in the back on the Boardwalk in what LAPD Chief Beck has described as a criminal act.[2]

Plaintiffs want to reach the local Venice community to enlist support on these subjects of overriding public concern.  Comp. at ¶8, 27.  On two occasions, when she sought to reach local residents in the historic Venice public forum, LAPD officers threatened Kennedy with citations if she did not stop what they told her was unlawful activity under LAMC §42.15: tabling and seeking donations.  No officer told Plaintiff that she could table after sunset if she moved to an "undesignated" space, or that she could "solicit" at some other place on the Boardwalk.

Defendant contends that the Complaint fails for a number of reasons, including that the Court conclusively decided the challenged "sunset" provision in *Dowd v. City of Los Angeles*, and that, in any event, Plaintiffs have "misread" the ordinance.  Defendant's motion misunderstands the cardinal rules of First Amendment jurisprudence.  As is shown below, Plaintiffs have standing to bring this action, it is

---

[1] Defendant introduced a footnote stating the obvious: Plaintiffs are not challenging LAMC §63.44, which imposes a midnight curfew on the Boardwalk as a "park" regulation.  That provision is not at issue here because it is not implicated by the facts alleged.  Plaintiffs take no position on whether it is constitutional.

[2] *See* "LAPD chief concerned about fatal shooting of unarmed man in Venice": http://www.latimes.com/local/lanow/la-me-ln-lapd-shooting-venice-20150506-story.html.

1   ripe for judicial review, and Plaintiffs have stated more than "plausible" claims for

2   relief on each issue.  They have pled claims that the challenged proscriptions cannot

3   lawfully be applied to their activities and that LAMC §42.15 unconstitutionally

4   excludes protected speech from a traditional public forum.  The Court can fashion the

5   appropriate equitable remedies based on the evidence developed in the case.

6   **II.     THE STANDARD ON A MOTION TO DISMISS**

7          Federal pleading standards require that a complaint must contain a "short and

8   plain statement of the claim showing that the [plaintiff] is entitled to relief."

9   Fed.R.Civ.P. 8(a).  If a complaint fails to do this, the defendant may move to dismiss

10  it under Rule 12(b)(6).  "To survive a motion to dismiss, a complaint must contain

11  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

12  on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

13  *v. Twombly*, 550 U.S. 544, 570 (2007)).

14         A claim is plausible on its face "when the plaintiff pleads factual content that

15  allows the court to draw the reasonable inference that the defendant is liable for the

16  misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief

17  above the speculative level." *Twombly*, 550 U.S. at 555.  This requires "more than a

18  sheer  possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  In

19  the case at bar, Plaintiffs have alleged specific facts supporting their claims that the

20  challenged ordinance is unconstitutional on its face and, at a minimum, as applied to

21  them on two separate occasions.

22         Plaintiffs also allege that they engaged in a "course of conduct arguably

23  affected with a constitutional interest and that there is a credible threat that the

24  provision will be invoked against [them]." *Valle del Sol v. Whiting,* 732 F.3d 1006,

25  1015 (9th Cir. 2013) (bracketed edit supplied).  Because this challenge involves core

26  speech presumptively protected by the First Amendment, Plaintiffs may raise these

27  claims before the Court "even if prosecution is only 'remotely possible.'" *ACLU of*

28  *Idaho v. City of Boise*, 998 F. Supp.2d 908, 914 (D.Id. 2014), quoting *Canatella v.*

1   *State of California*, 304 F.3d 843, 855 (9th Cir. 2002).

2   **III.   STATEMENT OF FACTS**

3           The Venice Justice Committee ("VJC") advocates against civil and human

4   rights violations in the Venice area with a focus on the interactions of the police and

5   the homeless community. Comp. ¶12.  Plaintiff Kennedy is a co-founder of the VJC.

6   Comp. ¶13.  On February 2, 2015, she set up a small folding table in a designated

7   vending spot shortly after sunset.  She placed signs, petitions to public officials,

8   pamphlets and a small container for donations on the table. Comp. ¶25.  On that day,

9   sunset occurred at 4:20 in the afternoon.  Comp. ¶24.  While the vendors and

10  performers had left, all of the businesses on the eastside of the Boardwalk were open

11  and the Boardwalk was brightly lit.  *Id.*

12          Shortly after she set up her table, Ms. Kennedy was approached by two LAPD

13  officers who told her she could not "vend" in a designated spot after sunset.  She

14  responded that she was not vending, just seeking donations to support VJC's work.

15  Comp. ¶25.  One of the officers then made a call on his cell phone, after which he

16  informed Ms. Kennedy that engaging in expressive activity on the west side of the

17  Boardwalk after sunset was a "gray area" but soliciting donations was, absolutely,

18  illegal "vending" after sunset in violation of LAMC 42.15. Comp. ¶26.  That was the

19  LAPD's understanding of the ordinance. Ms. Kennedy was threatened with a citation

20  if she did not immediately stop seeking donations.  In light of this, she stopped and

21  did not seek to engage in expressive activity on the Boardwalk after sunset for several

22  months. Comp. ¶26.

23          On September 25, 2015, Plaintiffs again set up in a designated spot to reach the

24  Venice community after sunset, this time with a very specific message concerning

25  two homeless men recently killed by the LAPD on or near the Boardwalk.  The flyers

26  on her table included one announcing a march the following day to protest the

27  killings of Brendon Glenn and Jason Davis by the LAPD, as well as the recent murder

28  of Jascent-Jamal Lee Warren, known as Shakespeare, outside the Cadillac Hotel on

the Boardwalk.  Comp. ¶27.  She also had a small container for donations.  Comp. ¶29.  That day, sunset occurred at 6:46 p.m., as local residents were dining, shopping or strolling on the Boardwalk.  Comp. ¶28.

This time, Ms. Kennedy was again approached by two LAPD officers shortly after she set up.   A supervisor soon arrived.[3]  He told her she could not be in a vending space after sunset and could only engage in petition activity on the Boardwalk if she walked in the middle of the Boardwalk and moved continually. Again, she was threatened with a citation if she did not comply.  Comp. ¶30.

Defendant contends that Plaintiffs have "misread" the ordinance and that, in fact, the expressive activity that they were ordered to cease on two separate occasions is allowed, either in undesignated spaces, or in "Designated Spaces" with restrictions on equipment and placement of materials set out in §42.15.   Defendant's Memorandum at pp. 1, l.21 - 2, l.4.  The City contends that this Court resolved the legal issues raised by Plaintiff's challenge to the  "sunset" provision in *Dowd v. City of Los Angeles*, 2013 U.S. Dist. LEXIS 111435 (C.D. Cal. Aug. 7, 2013). Def. Mem. at p.2, ll. 10-22.  *Dowd* challenged the "sunset" provision as applied to vendors and

---

[3] In the first incident, Kennedy was explicitly told she could not seek donations after sunset.  In the second incident, the LAPD supervisor, Sgt. Cook, provided Ms. Kennedy with a business card with his name and badge number and those of each of the patrol officers.  On the back of the card, Sgt. Cook wrote out the violation of §42.15 for unlawful "vending."  This time, Kennedy was told allowable expressive activity after sunset was limited to walking up and down the middle of the boardwalk, moving continually.  Regardless of whether the Court finds the facial challenge valid, these allegations state an "as-applied" claim.  *See CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1078 (9th Cir. 2015).  Although Defendant contends that there is no ban on either solicitation or other expressive activity after sunset (Def. Mem. at pp. 7-8), because the facts in the Complaint support Plaintiffs' allegations that officers told them their activity was prohibited or sharply circumscribed, at a minimum, Plaintiffs' failure to promulgate regulations and/or failure to train claim is more than "plausible."  Compl. § 38. Plaintiffs can amend, if necessary, to include these additional allegations.

performers under very different facts.  As is shown below, Plaintiffs have stated a claim for both a facial and as-applied challenge to the "sunset" and "donation" restrictions on their core petition activities. *Dowd* is not dispositive.

**IV.   PLAINTIFFS HAVE ALLEGED A PLAUSIBLE CLAIM THAT LAMC §45.12 UNCONSTITUTIONALLY RESTRICTS THEIR CORE SPEECH IN A QUINTESSENTIAL PUBLIC FORUM**

**A.   The Nature of the Forum**

The Venice Boardwalk is a traditional public forum long recognized by the City as perhaps the most prominent free speech area in the City.  *Perry v. Los Angeles Police Department*, 121 F.3d 1365, 1368 (9th Cir. 1997) (invalidating an earlier version of LAMC §42.15).   Although called a "boardwalk," this pedestrian passageway is a public sidewalk, deeded to the City as a sidewalk in perpetuity in 1906.[4]  *See Plaintiffs' Request for Judicial Notice* and Exhibit 1.

Public sidewalks "occupy a 'special position in terms of First Amendment protection' because of their historic role as sites for discussion and debate[.]" *McCullen v. Coakley*, 134 S.Ct. 2518, 2529 (2014) (internal citation omitted). They are the locations where people encounter speech they "might otherwise tune out." *Id.* "From time immemorial," public sidewalks have been locations where "normal conversation and leafleting" have occurred as part of the First Amendment's guarantee of "sharing ideas."  *Id.* at 2536.  *See also Hill v. Colorado,* 530 U.S. 703, 715 (2000) (sidewalks are among the "'quintessential' public forums for free speech). Indeed, public sidewalks are, perhaps, the most important traditional public forum because of their availability at any time at no cost.

_____

[4] "[T]he government [may not] transform the character of the property by the expedient of including it within the statutory definition" of a different type of public forum. *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 788 (9th Cir. 2006).  The character of a public forum may only be changed "by selling the property, changing its physical character, or changing its principal use."  *International Society for Krishna Consciousness v. Lee ("ISHKON"),* 505 U.S. 672, 699-700 (1992) (Kennedy, J., concurring in judgment).  None of that has occurred here.

Plaintiffs' subject matter is core political speech protected by the First Amendment. *See N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984) (a protest responding to recent police abuse constituted "political" speech). In the hierarchy of the First Amendment, such speech "occupies the highest, most protected position." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 422 (1992).

## B.   Available Space on the Boardwalk

LAMC 42.15 divides the Boardwalk into 205 designated spaces where vending, performing and expressive activity is allowed. LAMC §42.15.D. It is indisputable that the City categorizes the most fundamental free speech rights as "vending." As the ordinance states, the activities it regulates include "traditional expressive speech and petitioning activities" and characterizes as "Vend[ing] the following expressive items: newspapers, leaflets, pamphlets ..." LAMC §42.15.D.1 ("Vending and Performing on Designated Spaces").

Section 42.15.E(9) bars anyone from "set[ting] up or set[ting] down items in ... a Designated Space between Sunset and 9:00 a.m." The language of the ordinance is not limited to equipment in Designated Spaces after sunset: it prohibits even "set[ting] down items in" any "Designated Space" in this time period. This would include leaflets, which are expressly regulated under "vending." §42.15.D.1.

Section 42.15.F.1 sets forth "Special Rules" for "Areas Outside of the Designated Spaces, Pagodas and Recreation Area." Tables and other equipment may be set up in "undesignated" spaces on the west side of the Boardwalk so long as they do not "materially impede or obstruct pedestrian or vehicular traffic or areas designed for emergency ingress or egress." §42.15.F(1)(b). No tables or other equipment may be set up in "undesignated" areas on the east side of the Boardwalk. §42.15.F.(1)(a).[5]

---

[5]   These exceptions undermine the City's asserted governmental interests. Setting aside that the ordinance prohibits setting up any table on the east side of the Boardwalk, engaging in petition activities in the "Undesignated" areas on the east side of the Boardwalk directly implicates many of the City's asserted governmental

This might leave the Court with the impression that there are many places where Plaintiffs can engage in their intended activity on the Boardwalk after sunset. But that would be a misconception. Section 42.15.A.10 explicitly bars any expressive activity in the Pagodas, as well as "the area within a ten foot radius around each of the shade structures and seating located on the Boardwalk at Clubhouse Avenue, Breeze Avenue, Park Avenue, Sunset Avenue and Dudley Avenue."  In addition, LAMC §42.15.G expressly prohibits a person from "obstruct[ing] access to any City-owned or maintained property or equipment, including, but not limited to, street furniture, benches, planters, trash receptacles, Pagodas or other structures or equipment installed on public property ... ."  Plaintiffs can show that most of the "undesignated" spaces between "Designated Spaces" are only 30 inches or 60 inches wide and 60 inches deep.[6]  Nearly every "undesignated" space on the west side that is not marked with either the universal symbol for a reserved disability space, or as emergency ingress and egress, is unavailable because they contain trash cans, bike racks, benches, or a water fountain, removing these areas from use.

The primary open area on the Boardwalk is at Windward Circle.  Setting aside that this area is not nearly as highly trafficked as the southern area of the Boardwalk near the Rose parking lot, where most of the restaurants and bars are located,

---

interests for LAMC §42.15.  Unlike the west side, which is completely empty after sunset, the east side of the Boardwalk is largely unavailable any time of day because it is occupied by outdoor dining areas, filled with mannequins and other merchandise from stores, off limits because of necessary access to enter shops, restaurants, hotels and apartment buildings, or access to the walkways leading to and from the Boardwalk.  On the east side, the likelihood is far greater that tourists would feel harassed and ingress and egress to buildings and walkways would be obstructed, the governmental interests advanced to justify LAMC §42.15 in the first place.

[6] Standing behind a small folding cardtable, nearly the entire depth of the spaces on the west side of the Boardwalk would be occupied, substantially, if not nearly completely, blocking access to City "furniture" on the Boardwalk.

Plaintiffs cannot be in this area because all regulated activities and equipment are prohibited in the "Recreation Area" at Windward.  §42.15.F(c)(2)(b). Tables and other equipment are only allowed in the Recreation Area with authorization and pre-approval of the Board of Recreation and Parks Commissioners. *Id.*

So where would this leave Plaintiffs - some place south of Windward and north of Navy?  If north of Navy, Plaintiffs would be pushed to Santa Monica although their petitioning activities concern the inhumane treatment of homeless individuals in Los Angeles.  This would not be a reasonable time, place, or manner regulation because, as discussed below, it would not allow Plaintiffs to reach their intended audience and raise their issues in the vicinity of where the LAPD killed Brendan Glenn, or where Shakespeare was murdered at the Cadillac Hotel.

**C.    LAMC §42.15 is Not a Reasonable Time, Place or Manner Regulation**

**1.    The requirements of a reasonable time, place or manner regulation**

Content neutrality is a necessary prerequisite for a time, place or manner regulation of speech in a quintessential public forum.  *McCullen*, 134 S.Ct. at 2530.  "Consideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved." *Heffron v. International Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 650-51 (1981).

The Venice Boardwalk was deeded to the City in perpetuity as a sidewalk and has been used for that purpose as a pedestrian thoroughfare for more than a century.  Public sidewalks are, historically, the traditional public forum open and available to all without concern for closing streets or reserving park space for competing users.  Plaintiffs have a right to engage in core expressive activity on a public sidewalk.

Indeed, "a sidewalk is the 'prototypical' traditional public forum." *Marcavage v. City of New York*, 689 F.3d 98, 104 (2d. Cir. 2012).  Plaintiffs also have the right

-8-

to use portable tables on a public sidewalk to "facilitate the dissemination of First Amendment speech." *ACLU v. Las Vegas*, 466 F.3d at 799.  At their option, Plaintiffs may also remain stationary when they engage in expressive activity on a public sidewalk. *Foti v. City of Menlo Park,* 146 F.3d 629, 642-43 (9th Cir. 1998). According to Defendant, these rights somehow expire each day at sunset throughout nearly all of the City's historic traditional public forum in Venice, restricting far more speech than is necessary to achieve its asserted governmental interests.

In a traditional public forum, the government's right to limit expressive activity is "sharply circumscribed" and "subject to the highest scrutiny." *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998).  The government may enact reasonable time, place or manner regulations, but such regulations are valid only if they are 1) "justified without reference to the content of the regulated speech," 2) "narrowly tailored to serve a significant government interest" and do not burden "substantially more speech than is necessary," and 3) allow for "ample alternative channels for communication." *McCullen*, 134 S. Ct. at 2529, 2535 (internal citation omitted).  The failure to satisfy any single prong of this test invalidates the challenged regulation. *Grossman v. City of Portland*, 3 F.3d 1200, 1205 (9th Cir. 1994).

Although the "donation" restriction is content-based, as discussed below, the regulatory scheme for "Designated" and "Undesignated" spaces is accepted as content-neutral for this action, so the first prong of the test is met.

### 2. The "sunset" restriction in LAMC §45.12 is not narrowly-tailored

The requirement that a regulation restricting speech be "narrowly tailored" is aimed at preventing the government from restricting speech "for mere convenience," recognizing that when "certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance." *McCullen,* 134 S.Ct.

at 2534.[7]  A regulation is narrowly tailored if it "does not burden substantially more speech than is necessary to achieve a substantial government interest." *Berger v. Seattle,* 569 F.3d 1029, 1041 (9th Cir. 2009).

Even before *McCullen*, Defendant must show that the "recited harms are real, not merely conjecture" and that the regulation in fact alleviates these harms in a direct and material way." *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994).  After *McCullen*, Defendant bears the onus to "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 134 S.Ct. at 2540. To meet this heavy burden, the City must show that it "tried less restrictive alternatives and that they failed to secure the interests at stake." *Id.* at 2539.  Neither the City's Motion to Dismiss nor the decision in *Dowd* applies the standard announced in *McCullen* and neither provides any evidence to prove that the City tried less restrictive alternatives that would not have foreclosed Plaintiffs' ability to engage in core petitioning and soliciting activities after sunset in "Designated Spaces" on the west side, a time when the Boardwalk is open to the community as a gathering place.

### a. The "sunset" restriction on core expressive activity in "Designated Spaces" is not narrowly-tailored to further the asserted governmental interest in "cleaning" for the next day

As discussed above, *McCullen* now places a heavy burden on the City to prove that it tried less restrictive means of achieving its asserted interests and that those "failed to secure the interests at stake."  134 S.Ct. at 2539.  It is highly unlikely that the presence of a petitioner with a small table in a Designated Space after sunset is substantially more likely to interfere with the City's cleaning efforts on the west side of the Boardwalk than would a person engaging in identical activities in an "Undesignated Space," or a person with a stroller, or any other pedestrian permitted

---

[7] *McCullen* invalidated a "buffer zone" around a women's health care facility. The government restricted where the speech could take place, but did not prohibit it.

to be in "Designated Spaces" after sunset.

The City could readily protect its asserted governmental interests while allowing core petitioning activity in "Designated Spaces" after sunset. First, the City can enforce the provision that "Designated Spaces must be kept clean and free of litter and debris." §42.15.E.9. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949-50 (9th Cir. 2011) (en banc) (city can enforce criminal laws targeting the same objectives without regulating speech). Because it is highly unlikely that any detritus left by vendors and performers necessarily remains wholly within "Designated Spaces," the need to clean up would likely apply to the small spaces between "Designated Spaces," as well, where Plaintiffs are allowed to be after sunset for some purposes. For this reason, the broad restriction on where Plaintiffs can engage in expressive activity after sunset is not a significant governmental interest that outweighs the First Amendment rights at stake. *Id.* at 944.

The City has other options for achieving the asserted governmental interest in cleaning the Boardwalk.[8] For example, the City could restrict the size of tables used after sunset and limit the amount of materials on the ground to ensure portability and minimize the impact, if any, on cleaning the Boardwalk.[9] In addition, if the City can produce the extensive evidence necessary to regulate for any "secondary effects" of "vending" merchandise or performing after sunset, the City could limit the permissible activities in "Designated Spaces" after sunset in furtherance of those

---

[8] Misapplying a statute is not a significant governmental interest. *Center for Bio-Ethical Reform v. Los Angeles County Sheriff's Department*, 533 F.3d 780, 793 (9th Cir. 2008).

[9] Plaintiffs can amend their complaint to allege that cleaning rarely, if ever, occurs after sunset. Whatever the representation in *Dowd*, Plaintiffs' counsel have observed Boardwalk activity after sunset and early in the morning for the past two years and have observed trash picked up in the morning, before the 9:00 a.m. set up time in LAMC §42.15.

"secondary effects." But the City has done none of this.

As the Ninth Circuit recently underscored:

> Often, government restrictions on speech seem perfectly reasonable at first glance, and the encroachment on expression forgivable in pursuit of convenience ... But seventy years of law ... has laid down the basic principle that there are a few government-owned areas -- of which [sidewalks] are the preeminent example -- in which the values underlying the First Amendment favor communication among citizens over merely reasonable speech restrictions, and require instead that any regulation of speech be targeted at real problems, and carefully calibrated to solve those problems.

*Berger v. City of Seattle*, 569 F.3d at 1059.

"'If the First Amendment means anything, it means that regulating speech must be a last—not first—resort.'" *Comite de Jornaleros*, 657 F.3d at 950, (quoting *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). Admittedly, it might be easier for the City to achieve its goals by broad strokes but, as the Supreme Court has "reaffirmed simply and emphatically[,] the First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. National Federation of the Blind*, 487 U.S. 781, 795 (1988). *See also McCullen*, 134 S.Ct. at 2534-35. The easiest path is not sufficient justification for limitations on speech in a public forum without actual proof that there is no alternative to achieve this goal. *McCullen*, 134 S.Ct. at 2540.

**b.** **The restrictions on core expressive activity in "Designated Spaces" after sunset are not narrowly tailored to further any of the other governmental interests asserted in the ordinance.**

Section 42.15 was enacted to address purported problems raised by "Unregulated Vending and Performances." Plaintiffs do not seek to engage in either of these activities. The rationale for §42.15 was that these activities "adversely affect the historic character of the Boardwalk," including "hampering ... other free speech activity... ." LAMC §42.15.B.3 (Findings and Purposes). Indeed, the ordinance repeatedly underscores the need "to preserve the Boardwalk's rich history of ... free speech activity." LAMC §42.15.D.

The governmental interests at issue here are set forth in LAMC §42.15.B.4.

1   They include: stopping harassment of tourists (B.4.(a)); preventing conflicting claims

2   for space (B.4.(b); limiting equipment to facilitate pedestrian traffic, reducing visual

3   clutter and ensuring "emergency and non-emergency ingress and egress between the

4   beach and the Boardwalk (B.4.(c)); reducing interference with emergency response

5   vehicles related to medical situations and criminal activity (B.4.(d)); protecting

6   against the "sale of stolen, defective or counterfeit merchandise" (B.4.(e); prohibiting

7   unlicensed activities that are "illegal and harmful to human health" (B.4.(f)); reducing

8   "visual clutter" (B.4.(g)); restricting "unnecessary, excessive and annoying noise on

9   the Boardwalk" (B.4.(h)); factoring for events in the Recreation Area that "require

10  pre-planning and advanced [sic] notice" (B.4.(i)).

11      As discussed below, none of these asserted governmental interests are

12  implicated by Plaintiffs' activities and none have been held sufficient to justify a

13  time, place or manner regulation restricting access to a traditional public forum for

14  core speech activity, including solicitation.  For example, in *Foti*, the Ninth Circuit

15  held that an ordinance requiring persons carrying signs on a sidewalk to move

16  continually was unconstitutional because it was not narrowly tailored to serve the

17  state's interest in the free flow of pedestrian traffic on sidewalks. "Requiring

18  picketers to shuffle back and forth does not contribute to safe and convenient

19  circulation on sidewalks; presumably, pedestrians could better negotiate around a

20  stationary picketer than one who is walking back and forth."  146 F.3d at 643.

21      The result would be no different here.  Plaintiffs want to stand off to the west

22  side of the Boardwalk, allowing passersby to come to them, look at their flyers and

23  petitions, and engage in discussion on issues of primary concern throughout the City.

24  The LAPD has informed Plaintiffs that they must be in the middle of the Boardwalk,

25  constantly moving, to engage in their petitioning activities. There is not, nor can there

26  be, any showing that allowing Plaintiffs to engage in this activity with a small folding

27  table in a "Designated Space" after sunset so impedes Defendants' interests that it

28  must be severely restricted, if not banned in practical effect, after sunset.

1   Similarly, the City's asserted interests in preventing harassment of tourists and
2   preventing visual clutter are not satisfied by these restrictions on Plaintiffs' activities.
3   In fact, there is likely less potential that tourists would be harassed by allowing
4   Plaintiffs to speak from a table on the west side of the Boardwalk than requiring them
5   to follow people up and down the Boardwalk or stand on the east side. *See ISHKON,*
6   505 U.S. at 684.   Concerns about visual clutter are readily addressed by the
7   provisions in LAMC §42.15 regulating the height, width and look of items in
8   Designated Spaces during daytime hours to the core expressive activity in these same
9   spaces after sunset.  See LAMC §42.15.E.5.

10   Defendant contends that the decision by this Court in *Dowd v. City of Los*
11   *Angeles* is dispositive of Plaintiffs' claims.  In *Dowd*, the City justified the sunset
12   restrictions on vendors and performers as necessary to ensure the cleanliness and
13   safety of pedestrians on the Boardwalk for the next day. 2013 U.S. Dist. LEXIS
14   111435, *38 n.4.  Although the Court accepted the City's rationale, there is no
15   indication in the decision that it held the City to the heavy burden announced in
16   *McCullen* and *Reed*.  *Dowd* was decided on cross-motions for summary judgment.
17   The standard on a motion to dismiss is far different than for a motion for summary
18   judgment. In *Dowd*, with an opportunity to develop a record, the Court found that the
19   evidence was insufficient to create a disputed factual issue. *Id.* at 40-41.

20   It bears repeating that, it might be easier for the City to achieve its asserted
21   interests by broad strokes but, as the Supreme Court has "reaffirmed simply and
22   emphatically[,] the First Amendment does not permit the State to sacrifice speech for
23   efficiency." *Riley*, 487 U.S. at 795. *See also McCullen*, 134 S.Ct. at 2534-35.  In
24   short, the government may regulate the problems the ordinance seeks to eliminate –
25   fights over access to designated spots, etc. – but it may not "exclude individuals from
26   areas historically open for speech and debate" when their expressive activity does not
27   itself threaten the governmental interests set forth in support of the ordinance.
28   *McCullen*, 2537-39.

*McCullen* invalidated a sidewalk buffer-zone because the government failed to prove that other state laws were insufficient to further the asserted interests without infringing on free speech. *Id.* The fact that the City claimed the restriction was necessary because it was difficult to enforce criminal laws addressing the same interests was held insufficient to justify the restrictions on expressive activity on a public sidewalk challenged. *Id.* at 2540. "Given the vital First Amendment interests at stake, it is not enough for [the City] simply to say that other approaches have not worked." *Id.* (bracketed edit supplied).

"[Plaintiffs] wish to converse with their fellow citizens about an important subject on the public streets and sidewalks - sites that have hosted discussions about the issues of the day throughout history. [Defendant] assert[s] undeniably significant interests in maintaining public safety on those same ... public sidewalks, as well as in preserving access to adjacent healthcare facilities ... . But here the [City] has pursued those interests by the extreme step of closing a substantial portion of a traditional public forum to all speakers ... .  It has done so without seriously addressing the problem through alternatives that leave the forum open for its time-honored purposes.  The [City] may not do that consistent with the First Amendment." *McCullen*, 134 S.Ct. at 2541 (bracketed edits supplied).

### 3.    LAMC §45.12 does not allow ample alternatives after sunset

"An alternative is not ample if the speaker is not permitted to reach the intended audience." *Berger*, 569 F.3d at 1049.  *See also, Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1025, 1034 (9th Cir. 2009).

There is no ample alternative here for three reasons.  First, all of the restrictions in LAMC §42.15, when read in combination, severely limit where Plaintiffs can engage in their intended expressive activity after sunset.  For example, there is no Undesignated Space within several blocks of the Cadillac Hotel where Plaintiff can use a small table and petition without violating one or more provisions of §42.15. The Cadillac Hotel is the site of Shakespeare's murder and is also close to the Venice

Bistro, perhaps the most popular gathering place on the Boardwalk.  It is located at Dudley.[10]

Plaintiff engaged in petitioning activity near the Dudley Pagoda when she was first told she could not seek donations at all and that tabling after sunset was a "gray area."  There is no available undesignated space in this area and LAMC §42.15.A.10 prohibits engaging in any of the regulated activity within 10 feet of a pagoda.

Second, it is no answer to say that Plaintiff may still leaflet on the Boardwalk after sunset while moving continuously up and down the middle of the Boardwalk.  This alternative does not provide ample alternatives to engage in the type of one-on-one discussions that are protected expressive activity on a public sidewalk, as recently underscored by the Supreme Court in *McCullen*.  Where, as here, the Plaintiffs seek "to inform . . . through personal, caring, consensual conversations[,] . . . it is . . . no answer to say that petitioners can still be 'seen and heard'" if they are required to keep moving in the middle of the Boardwalk at all times. *McCullen* 2537.  "[O]ne-on-one communication" is "the most effective, fundamental, and perhaps economical avenue of political discourse" and the burden this restriction places on core political speech in a traditional public form cannot be excused by offering speakers an alternative forum down the Boardwalk or an alternative method of communication.  *McCullen*, 134 S.Ct. at 2536, quoting *Meyer v. Grant*, 486 U.S. 414, 424 (1988).

The third reason why the sunset restriction does not allow for ample alternatives is that, as the Ninth Circuit has held, leafletting is not a substitute for tabling.  Using a table for First Amendment activity sends a different message than a person roaming the Boardwalk, forced to constantly move, and limited to handing out leaflets.  "Tables facilitate [free speech activities] by enabling the display of multiple pamphlets or other items, as well as the distribution of a greater amount of material.  Additionally, the use

---

[10]   The Cadillac Hotel is located at 8 Dudley Avenue.  *See* www.thecadillachotel.com.  The Court can take judicial notice of a fact that is readily verifiable.  FRE 201.

of a table may convey a message by giving the organization the appearance of greater stability and resources than that projected by a lone, roaming leafletter." *ACLU of Nevada v. City of Las Vegas*,  333 F.3d 1092, 1108 n15 (9th Cir. 2003) (bracketed edits supplied).

D.     **The Restriction on Solicitation of Donations Is Content-based**

1.     **Content-based regulations of First Amendment expression**

Plaintiffs allege that the ban on solicitation after sunset is both unconstitutional on its face and as applied to them.   Ordinarily, one who challenges the constitutionality of a law on its face "must establish that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The rule is different, however, when First Amendment interests are at stake. *See Virginia v. Hicks*, 539 U.S. 113, 118 (2003). In such a case, courts will invalidate a statute that "reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982).

"[R]egulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015).  A regulation is content-based if, "on its face," the law "draws distinctions based on the message or defines "regulated speech by its function or purpose." *Reed* at 2227.  After *Reed*, a law that restricts solicitation of donations in a public forum is a content-based regulation because it prohibits one category of speech, but not others.

Under this doctrine, statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston, Tex. v. Hill,* 482 U.S. 451, 459 (1987).  As the Supreme Court has explained, "[w]e have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Hicks,* 539 U.S. at 119.

-17-

"A content based regulation ... is 'presumptively unconstitutional' ... and subject to strict scrutiny." *ACLU of Nev.*, 466 F.3d 784, 792 (9th Cir. 2006) (internal citations omitted).   It "must be the least restrictive means of achieving a compelling state interest." *McCullen*, 134 S.Ct. at 2530.  This means "[t]he City must do more than identify interests, it must produce 'tangible evidence that speech-restrictive regulations are necessary to advance the proffered interests." *ACLU of Idaho,* 998 F.Supp.2d at 917, quoting *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 863 (9th Cir. 2001). The City must prove that the regulations "are the *least* restrictive means at achieving the governmental interest." 998 F.3d at 917 (emphasis in original).

There is no question that  the prohibition on solicitation after sunset is an impermissible content-based rule.  Plaintiffs may hand out leaflets or ask people to sign a petition calling on the Chief of Police or the Board of Police Commissioners to release the video of Brendon Glenn's killing on the Boardwalk, but if they request donations, they are deemed to be "vending" and thereby violate LAMC §42.15.  *See also ACLU of Nevada*, 466 F.3d at 794 (solicitation ordinance is content based because it prohibits leaflets requesting donations but not other speech).

"[S]olicitation is a form of expression entitled to the same constitutional protection as traditional speech[.]" *Id.* at 466 F.3d at 788.[11]  "[C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests – communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes – that are within the protection of the First Amendment." *Village of Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980). This protection extends to solicitation using a donation receptacle even when the solicitation is not accompanied by an in-person request, as here. *See, e.g., Planet Aid*

---

[11] Solicitation is also protected under the California Constitution, art. I, §2(a), which utilizes an analysis identical to that of its federal counterpart. *See Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal.4th 352, 364 (2000); *Prigmore v. City of Redding*, 211 Cal.App.4th 1322, 1336 (2012).

*v. City of St. Johns, MI*, 782 F.3d 3108 (6th Cir. 2014).

Plaintiffs were directed by the LAPD to cease even "passive" solicitation of donations on a public sidewalk after sunset.  For a group like VJC, requests for financial support are "intertwined with information and perhaps persuasive speech seeking support for particular causes, or for particular views on economic, political, or social issues." *Schaumburg,* 444 U.S. at 632.  "[W]ithout solicitation the flow of such information and advocacy would likely cease." *Id.*  To this end, "face to face" solicitation produces "a greater opportunity for the exchange of ideas and the propagation of views" and is entitled to more First Amendment protection than other forms of solicitation. *Cornelius v. NAACP Legal Defense & Education Fund, Inc.*, 473 U.S. 788, 798-99 (1985). *See also McCullen*, 134 S.Ct. at 2536.

### 2.   The ordinance is not narrowly-tailored

It is difficult to understand what the governmental interest is here.  It cannot be the need to clean-up for the next day because solicitation does not carry with it any inherent likelihood of littering.  Moreover, a restriction on solicitation cannot be justified by general concerns about the effect that even peaceful, non-aggressive requests for donations may have on passersby at night. Our constitution does not permit government to restrict speech in a public forum merely because it may make listeners uncomfortable. *R.A.V.,* 505 U.S. at 394.

In *Berger*, the *en banc* court struck down a law that prohibited performers from "actively solicit[ing] donations" in a downtown area, limiting them to "passive" solicitation of donations with a sign.  569 F.3d at 1050.  The Circuit held that the ordinance differentiated impermissibly between categories of speech based on content, 569 F.3d at 1051, and that the ban on "active solicitation" was broader than necessary to address the government's interest in curbing "aggressive solicitation." *Id.* at 1052-53.  Here, the City has told Plaintiffs that they may not even engage in "passive" solicitation by placing a container on a table with leaflets, petitions and posters. As in *Berger* and *ACLU v. Nevada*, there is no evidence that the sunset restriction on

1    solicitation is narrowly-tailored.

2              **3.    The bar on solicitation does not allow ample alternatives**

3         In *ACLU of Idaho*, the court held that allowing "passive" solicitation while

4    banning "active" solicitation in a public forum did not allow an "ample alternative for

5    communication." 998 F.Supp.2d at 917.  Here, Plaintiff was told she could not solicit

6    at all after sunset.  The City's enforcement of the "donation" provision is patently

7    unconstitutional because it allows no alternatives.

8    **V.    Plaintiffs State A Claim Under Cal. Civ. Code § 52.1.**

9         Plaintiffs state a claim under the Bane Act, California Civil Code §52.1.  They

10   allege that: (1) Defendants ""interfere[d]…with the exercise or enjoyment" of

11   Plaintiffs' rights under the federal and state constitution, and (2) Defendants did so by

12   use of "threats, intimidation, or coercion." Cal. Civ. Code §52.1.  Defendant's

13   assertion that Plaintiffs do not make this showing is wrong for at least three reasons.

14        First, Defendant erroneously contends that *Allen v. City of Sacramento*, 234

15   Cal.App.4th 41, 67 (2015) and *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th

16   Cir. 2015) stand for the proposition that wrongfully arresting or wrongfully

17   threatening to arrest or cite an individual can <u>never</u> satisfy the "coercive" element of

18   a §52.1 claim.  Neither case holds this.

19        In *Allen*, plaintiffs alleged §52.1 claims based on unlawful arrests in violation

20   of the Fourth Amendment.  *Id.* at 67-68.  They argued that the unlawful arrests were

21   coercive simply because arrests are inherently coercive. *Id.* at 66.  The court disagreed

22   and held that an unlawful arrest, "without more, does not satisfy" a claim under §52.1.

23   *Id.* at 69.  In *Allen*, the alleged threatening or coercive conduct—the arrest—was the

24   very conduct that established the constitutional violation.[1]   *See id.* at 68-69.

25

26   _____

27   [1]      Defendants also misconstrue *Allen* by asserting that a threat of arrest can never
     meet the second prong of the Bane Act. Def. Mot. at p. 15.  However, *Allen* specifies

28   that verbal threats of arrest or property seizure are insufficient *only* to establish
     "threats"—it never states that such conduct is insufficient to establish "intimidation"

                                            -20-

Significantly, *Allen* does not hold that threats of arrest or citations can never satisfy §52.1's "coercive" element where the underlying constitutional violations do not require an arrest as an element of the violation. *See generally*, 234 Cal.App.4th 41.

In *Lyall*, the Ninth Circuit limited *Allen* to search and seizure cases.  807 F.3d at 1196.  "[P]laintiffs *in a search-and-seizure case* must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act."  *Id.* (citing to *Allen*, 234 Cal.App.4th 41) (emphasis added).  Thus, as in *Allen*, a plaintiff alleging "threats, intimidation, or coercion" pursuant to §52.1 in an unlawful search or seizure claim must allege conduct beyond what is an element inherent in every seizure or search.  *See Lyall*, 807 F.3d at 1196.

Plaintiffs' §52.1 claim fundamentally differs from the illegal search and seizure in *Allen* and *Lyall.*  In this instance, the "coercive" element of an arrest, citation or threat of arrest or citation is not an inherent element of a First Amendment claim.

*McKibben v. McMahon*, No. EDVC 14-02171 JGB (SPx), slip op. *4, 2015 WL 10382396 (C.D. Cal Apr. 17, 2015) applied the correct test to uphold a §52.1 claim, distinguishing *Allen* in an unlawful seizure case and holding that defendants' "coercive choice is the 'more' that separates this case from *Allen.*"  The "coercive choice" the LAPD officers put to Plaintiff Kennedy is the "more" in this case, as well.  Defendant's officers wrongly told Plaintiff Kennedy that her activity constituted "vending" and, therefore, that she was restricted from distributing literature and accepting donations in a designated space on the west side of the Boardwalk after sunset.  They gave her a choice: forego your protected expressive activity or face a citation.  Her only choice was to walk up and down the middle of the Boardwalk, moving at all times, or receive a citation.

Second, Defendants are incorrect that a §52.1 claim requires violence or a perceived threat of violence.  This language appears nowhere in the statute.  *See* Cal.

---

or "coercion."  *See Allen*, 234 Cal.App.4th at 66.

Civ. Code §52.1.  Moreover, the California Supreme Court rejected this same argument more than a decade ago in *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841 (2004).  There, the  Court clarified that the "violence" element was incorrectly imported from Civil Code § 51.7.  As the high Court underscored, §§ 51.7 and 52.1 are "separate and independent" from each other, expressly rejecting the analysis in *Boccato v. City of Hermosa Beach*, 29 Cal. App. 4th 1797, 1809 (1994), where the intermediate court required the sections to be read in conjunction with one another.  *See Venegas*, 32 Cal. 4th at 842. *See also Stamps v. Super. Court*, 136 Cal. App. 4th 1441, 1448 (2006).

Nevertheless, Defendant contends that an "operative test" should be applied to evaluate a §52.1 claim, injecting additional elements not expressly contained in the statute that purportedly requires a showing that a reasonable person would have "been intimidated by the actions of the defendant and have perceived a threat of violence." Defendants' Motion at 14-15.  This "test" finds no support in the statutory language or the law.  In view of *Venegas*, this argument necessarily fails.

The authority Defendant cites does not support this argument.  In *Richardson v. City of Antioch*, 722 F.Supp.2d 1133, 1147 (N.D. Cal. 2010) the court relied on *Winarto v. Toshiba America Electronic Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001).  *Winarto* discussed a claim under Cal. Civ. Code §51.7 ("The Ralph Act").  By its express language, §51.7 provides that "[a]ll persons…have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property" because of any protected characteristic such as race, sex, or national origin. *Id.*  Significantly, *Winarto* rejected the argument that the "violence" element in §51.7 be "extreme" and "criminal."  *Id.* at 1289.  As the Circuit noted, "[i]f the California legislature wanted to limit the reach of the statute to extreme, criminal acts of violence, it could have explicitly said so."  *Id.*  If the California legislature wanted to require Defendant's "operative test," including an element of violence for a §52.1 claim, "it could have explicitly said so."  *Id.*  Again, as *Venegas* held, there is no

-22-

similar language in §52.1 and a "violence" element may not be read into the statute.

Third, that violence or a threat of violence is unnecessary to establish either "threats," "intimidation," or "coercion" under §52.1 is further supported by *Gant v. City of Los Angeles*, 772 F.3d 608 (9th Cir. 2014) (reversing summary judgment on plaintiff's §52.1 claim where the alleged "coercion" did not include violence or a perceived threat of violence). *See id.* In *Gant*, the Circuit found a genuine issue of fact as to whether there was "coercion" by the police in questioning of a purported suspect. *Id.* at 623-24. There was no assertion of a threat of violence in the case.

In sum, Plaintiffs need not allege "violence" to maintain a §52.1 claim where the threat of a criminal citation is not inherent in a cause of action for a violation of constitutional rights. *See McKibben*, EDVC 14-02171 JGB (SPx), slip op. *4 ("[I]t should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right…as incorporating a threatening, coercive, intimidating verbal or written component[…]when a section 52.1 claim is alleged against a government actor, the burden of showing 'threats, intimidation, or coercion' is minimal." (internal citations and quotations omitted)).

## VI.   CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss should be denied. Plaintiffs have established that the allegations of the Complaint are more than "plausible."

Dated: July 10, 2016                    Respectfully submitted,

                                        LAW OFFICE OF CAROL A. SOBEL

                                            /s/ Carol A. Sobel
                                        By: CAROL A. SOBEL
                                        Attorneys for Plaintiffs