1  MICHAEL N. FEUER, City Attorney (SBN 111529)
2  JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
   THOMAS H. PETERS, Chief Assistant City Attorney (SBN 163388)
3  SARA UGAZ, Deputy City Attorney (SBN 239031)
4  200 North Main Street, 6th Floor, Business & Complex Litigation
   Los Angeles, California 90012
5  Tel: (213) 978-7564
6  Fax: (213) 978-7011
   Email: Sara.Ugaz@lacity.org
7
8  Attorneys for Defendant
9  CITY OF LOS ANGELES

10              **UNITED STATES DISTRICT COURT**
11             **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  VENICE JUSTICE COMMITTEE, an unincorporated association; and PEGGY KENNEDY, an individual, | CASE NO.:  2:16-cv-01115-DDP-SS |
| 14 | Complaint Filed:  February 17, 2016 |
| 15              Plaintiffs, | |
| 16       vs. | **DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| 17 | |
| 18  CITY OF LOS ANGELES, and DOES 1-10, | |
| 19              Defendants. | Hearing Date: August 1, 2016 |
| 20 | Time: 10:00 a.m. |
| | Courtroom: 3 |

21
22
23
24
25
26
27
28

---

1

# TABLE OF CONTENTS

I     INTRODUCTION ..................................................................1

II    ARGUMENT .......................................................................1

    A.  The Sunset Provision is a Content-Neutral, Reasonable Regulation of the Manner in Which Plaintiffs' Protected Speech May be Carried Out in a Public Park ..............................................................1

        1.  The Sunset Provision is Content-Neutral and Therefore Needs to Satisfy Intermediate, Not Strict, Scrutiny. ........................1

        2.  The Sunset Provision Satisfies Intermediate Scrutiny ..........................2

           a.  The Sunset Provision's Ban on Tables in Designated Spaces between the Hours of Sunset and 9:00 a.m. Leaves Open Ample Alternative Channels for Communication of Information ...................................2

           b.  The Sunset Provision is Narrowly Tailored to Serve Significant Governmental Interests..........................................................4

           c.  Plaintiffs Do Not Have an Unfettered Right Under the First Amendement to Use Tables in Designated Spaces Between the Hours of Sunset and 9:00 a.m.........................7

    B.  LAMC §4215. Does Not Prohibit Expressive Activity or Soliciting Donations. ........................................................10

    C.  Plaintiffs Do Not Allege A Congnizable As-Applied Challenge. ..........10

    D.  Plaintiffs Have Not Alleged a Cognizable Claim Under the Bane Act .11

III.   CONCLUSION ...................................................................13

i

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3
**Cases**

4
*Allen v. City of Sacramento,*
5
    234 Cal.App.4th 41 (2015) .......................................................................12

6
*Clark v. Cmty. for Creative Non-Violence,*
7
    468 U.S. 288 (1984)..................................................................2, 3, 4, 6

8
*CPR for Skid Row v. City of Los Angeles,*
9
    779 F.3d 1098 (9th Cir. 2015) ................................................................11

10
*Foti v. City of Menlo Park,*
11
    146 F.3d 629 (9th Cir. 1998) ........................................................... *passim*

12
*Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,*
13
    452 U.S. 640 (1981)...................................................................................1

14
*Jones v. Kmart Corp.,*
15
    17 Cal.4th 329 (1998) .............................................................................11

16
*Kaahumanu v. Hawaii,*
17
    682 F.3d 789 (9th Cir. 2012) ....................................................................2

18
*McCullen v. Coakley,*
19
    134 S. Ct. 2518 (2014)...................................................................1, 2, 4, 5

20
*McKibben v. McMahon,*
21
    No. EDVC 14-02171 ...............................................................................12

22
*Members of City Council v. Taxpayers for Vincent,*
    466 U.S. 789 (1984)................................................................................10

23
*Meyer v. Grant,*
24
    486 U.S. 414 (1988)..................................................................................3

25
*Shoyoye v. County of Los Angeles*
26
    (2012) 203 Cal.App.4th 947 ....................................................................12

27
*Venegas v. County of Los Angeles,*
28
    32 Cal.4th 820 (2004)..............................................................................11

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT

*Ward v. Rock Against Racism*
    *491 U.S. 781, 800,* .......................................................................................4

**Penal Code**

Penal Code section 403 ..............................................................................11

**Statutes**

Civil Code section 52.1(a) ........................................................................13

**Other Authorities**

Bane Act.........................................................................................................1

First Amendment ................................................................................. *passim*

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

The First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Indeed, protected speech even in such quintessential public forums as public sidewalks and parks is subject to reasonable time, place, and manner restrictions. Accordingly, here, the City enacted the sunset provision, which prohibits the setting down of items in Designated Spaces between the hours of sunset and 9:00 a.m. The sunset provision is a content-neutral and reasonable regulation of the manner in which expressive activities may be carried out in the Venice Beach public park. It is also narrowly tailored to serve a myriad of significant government interests, including providing fair and equal access to Designated Spaces, controlling noise, allowing a better view of the Pacific Ocean at sunset, and facilitating cleaning of the Boardwalk. For all these reasons and the reasons given in the City's moving papers, Plaintiffs' facial challenge to the sunset provision fails as a matter of law. Plaintiffs' claim under the Bane Act likewise fails. As such, the City's motion to dismiss should be granted in its entirety.

## II.    ARGUMENT

**A. The Sunset Provision is a Content-Neutral, Reasonable Regulation of the Manner in Which Plaintiffs' Protected Speech May be Carried Out in a Public Park.**

**1.  The Sunset Provision is Content-Neutral and Therefore Needs to Satisfy Intermediate, Not Strict, Scrutiny.**

The level of scrutiny that a regulation restricting protected speech is subjected to is determined by whether it is content-based or content-neutral. *McCullen v. Coakley*, 134 S. Ct. 2518, 2530 (2014). If the regulation is content-based, then it must satisfy strict scrutiny—that is, it must be the least restrictive means of achieving a compelling state interest. *Id.* at 2530, citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). If the regulation is content-neutral, then it is subject to a less

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

stringent level of scrutiny—intermediate scrutiny—which requires that the regulation be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information.  *Id*. at 2529, 2534.

Here, the Los Angeles Municipal Code's ("LAMC") sunset provision states in its entirety, "[n]o person shall set up or set down items in, take down items from or block, or attempt to reserve a Designated Space between Sunset and 9:00 a.m."  (RJN, Ex. 1 [LAMC §42.15 (E)(9)].)  To determine whether a restriction is content-neutral, the Court does not "make a searching inquiry of hidden motive" but "look[s] at the literal command of the restraint."  *Kaahumanu v. Hawaii*, 682 F.3d 789, 808 (9th Cir. 2012). The sunset provision is content-neutral as it does not target or privilege any particular message, as Plaintiffs Peggy Kennedy and her organization, the Venice Justice Committee, (collectively "Plaintiffs") concede.  (*See* Pls.' Opp'n to Mot. Dismiss, 9:18-20.)  The literal command of the sunset provision is viewpoint neutral as it bans the setting down of any item, table, or similar equipment regardless of what message, if any, it might facilitate.  Thus, intermediate level of scrutiny applies to whether the sunset provision is facially invalid.  Accordingly, if the sunset provision advances important government interests unrelated to the suppression of free speech, and does so in ways that effect as minimal a restriction on speaker expression as possible, then it should be upheld.  As discussed below, those criteria are satisfied here.

>    2.    **The Sunset Provision Satisfies Intermediate Scrutiny.**

>        a.    **The Sunset Provision's Ban on Tables in Designated Spaces between the Hours of Sunset and 9:00 a.m. Leaves Open Ample Alternative Channels for Communication of Information.**

In *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 296 (1984), the Supreme Court upheld the National Park Service's prohibition on camping even when applied to the symbolic conduct of demonstrators who wanted to sleep in public parks to call attention to the plight of the homeless.  The Supreme Court reasoned that even without overnight sleeping the demonstrators could communicate the plight of the

2

homeless in other ways, such as taking turns to maintain day-and-night vigils at the symbolic tent city located in the parks.  *Id.* at 295.  Similarly, in *Foti v. City of Menlo Park*, 146 F.3d 629, 640-642 (9th Cir. 1998), the Ninth Circuit upheld a restriction on the size and number of signs carried by anti-abortion protestors on a public sidewalk. The Ninth Circuit found that ample alternative channels of communication exist for the protestors to convey their message, such as leafletting and sidewalk speeches, and the ordinance did not limit the number of protestors or the frequency of their picketing.  *Id.* at 641.  The manner restrictions in *Clark* and *Foti* are distinguishable from the means or avenue restriction in *Meyer v. Grant*, 486 U.S. 414, 424 (1988), where the government made it a felony to pay petition circulators, thereby restricting access to one-on-one communication, which is the "most effective, fundamental, and perhaps economical avenue of political discourse," and only left open more burdensome avenues of communication.  *Foti*, *supra*, 146 F.3d at 641-42.

Here, the plain language of LAMC section 42.15 makes clear that Plaintiffs are free to engage in their advocacy efforts, including displaying their petition materials on a table and soliciting donations, in any of the 205 Designated Spaces on the Westside of the Venice Boardwalk from the hours of 9:00 a.m. to sunset, seven days a week, 365 days a year.[1]  (Defendant City of Los Angeles's Request for Judicial Notice ("RJN"), Ex. 1 [LAMC §§42.15 (A)(4); (D)(1); (E)(9)].)  After sunset, Plaintiffs have the following options, among many others: (1) remain in the Designated Space and continue their advocacy efforts without a table; (2) walk along the boardwalk and engage in their advocacy efforts in a mobile fashion; and/or (3) move to an Undesignated Space on the Westside of the Boardwalk and continue their advocacy

---

[1] Plaintiffs complain that there is a lack of available space on the boardwalk, (Pls.' Opp'n to Mot. Dismiss, pp. 6-8), but that is the result of the boardwalk's overwhelming popularity as a destination for tourists, vendors, and expressive activity, and its overall configuration as a narrow, linear promenade.  (RJN, Ex. 1 [LAMC §42.15 (B)(4)(b)].) Such a situation, which is largely outside of the City's control, does not implicate Plaintiffs' First Amendment rights and is simply a fact of life on the boardwalk.

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

efforts with a table.  (RJN, Ex. 1 [LAMC §§42.15 (D)(1); (E)(9); (F)(1)(a); (F)(1)(b)].)
This situation satisfies the "ample alternative channels for communication of the
information" prong of the intermediate scrutiny test because under all of these post-
sunset options, Plaintiffs are still allowed to be present on the boardwalk and convey
their message that is geared toward "achieving peace and justice in the Venice
community" through direct one-on-one communication, which is their preferred means
of communicating with local residents of Venice.[2]  They can also distribute leaflets and
solicit donations.  The only limitation is that they must do so without a table if they
wish to remain in the Designated Space after sunset, just as the demonstrators in *Clark*
had to forgo camping and sleeping in national parks and the picketers in *Foti* were
limited to carrying a single, non-oversized sign.

> **b.**    **The Sunset Provision is Narrowly Tailored to Serve Significant
> Governmental Interests.**

For a content-neutral time, place, or manner regulation to be narrowly tailored, it
must not "burden substantially more speech than is necessary to further the
government's legitimate interests."  *McCullen*, *supra*, 134 S. Ct. at 2535, citing *Ward v.
Rock Against Racism*, 491 U.S. 781, 800 (1989).  Such a regulation, unlike a content-
based restriction of speech, "need not be the least restrictive or least intrusive means of"
serving the government's interests.  *Id*., citing *Ward*, *supra*, 491 U.S. at 798.  But the
government still "may not regulate expression in such a manner that a substantial
portion of the burden on speech does not serve to advance its goals."  *Id*., citing *Ward*,
*supra*, 491 U.S. at 799.

---

[2] Interestingly, Plaintiffs claim they want to target "local Venice residents" for their
message, but they do not explain how they would be able to differentiate locals from the
millions of tourists who flock to the boardwalk each year.  Plaintiffs would probably be
more effective in reaching their intended audience by attending Neighborhood Council
meetings and/or canvassing door-to-door.

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT

In *McCullen*, a case upon which Plaintiffs heavily rely, Massachusetts passed a law that made it a crime to stand on a public way or sidewalk within 35 feet of an abortion clinic. *Id*. at 2525. This fixed buffer zone around abortion clinics effectively excluded anti-abortion protestors and "sidewalk counselors" who offer information about alternatives to abortion from an extensive expanse of the public sidewalk in front of clinics. *Id*. at 2527. The Supreme Court found that the law was not narrowly tailored because Massachusetts pursued its interests of "public safety, patient access to healthcare, and the unobstructed use of sidewalks and roadways" by the "extreme step of closing a substantial portion of the traditional public forum to all speakers…without seriously addressing the problem through alternatives that leave the forum open for its time-honored purposes." *Id*. at pp. 2535, 2541. Massachusetts had no evidence that it tried other approaches that did not work. *Id*. at 2539. "In short, the Commonwealth has not shown that it seriously undertook to address the problem with less intrusive tools readily available to it. Nor has it shown that it considered different methods that other jurisdictions have found effective." *Id*.

The *McCullen* case misses the mark. Here, the boardwalk remains open and available to Plaintiffs *in all places and at all times* to engage in their advocacy efforts. The sunset provision in no way prevents Plaintiffs from being present on the boardwalk. There is just one minor restriction: Plaintiffs simply cannot put any items down in a Designated Space during the hours of sunset and 9:00 a.m. In *McCullen*, the buffer zone law entirely deprived protestors and anti-abortion counselors from having direct one-on-one communication with their intended audience, potential abortion patients. *Id*. at 2536. But the sunset provision does not prevent Plaintiffs from having direct one-on-one communication with their intended audience, local Venice residents. As such, the sunset provision does not suffer any of the same infirmities as the buffer zone law. In stark contrast to the buffer zone law, the sunset provision is not so restrictive to foreclose the effective exercise of Plaintiffs' First Amendment rights.

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1    Additionally, Plaintiffs' opposition focuses on the fact that the Venice Beach

2    Boardwalk is a quintessential public forum—a public park—where a speaker's

3    First Amendment protections reach their zenith.  But contrary to Plaintiffs' assertions,

4    public parks are not exempt from narrowly-tailored restrictions on protected speech or

5    conduct.  In *Clark,* the Supreme Court upheld the government's prohibition on camping

6    and sleeping in certain parks because it "narrowly focuses on the Government's

7    substantial interest in maintaining the parks in the heart of our Capital in an attractive

8    and intact condition, readily available to the millions of people who wish to see and

9    enjoy them by their presence."  468 U.S. at 296.  "To permit camping -- using these

10   areas as living accommodations -- would be totally inimical to these purposes…"  *Id*.

11   Even though the Supreme Court opined that a prohibition on tents and/or 24-hour

12   demonstrations would probably more effectively address the Government's interests

13   and be easier to enforce, it nonetheless upheld the prohibition "as a valuable, but

14   perhaps imperfect, protection to the parks" and concluded that "the ban is safe from

15   invalidation under the First Amendment as a reasonable regulation of the *manner* in

16   which a demonstration may be carried out."  *Id*. at 297 (emphasis added).

17       Similarly here, the City has an interest in maintaining its public park in an

18   attractive, clean, and safe condition, and ensuring that Designated Spaces are readily

19   available to people who wish to use them on a first-come, first-served basis at 9:00 a.m.

20   Allowing people to set down items indefinitely, or even overnight, in Designated

21   Spaces would be inimical to those interests.  Furthermore, the fact that Plaintiffs have

22   identified alternative measures that they believe would more effectively address the

23   City's interests, such as restricting the size of tables after sunset and limiting the amount

24   of materials on the ground to ensure portability, does not render the sunset provision

25   constitutionally invalid.  *See Clark*, *supra*, 468 U.S. at 297.

26       To be clear, the prohibition on setting down items, including tables, in

27   Designated Spaces between the hours of sunset and 9:00 a.m. is justified by a *myriad* of

28   government interests and not, as Plaintiffs imply in their opposition papers, strictly

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT

keeping the park clean.  The sunset provision primarily promotes the City's interest in providing fair and equal access to Designated Spaces.  As this Court is well-aware, the competition for Designated Spaces is fierce and, at times, violent, and without the sunset provision people would set up/put down equipment within a Designated Space at the end of the day in an attempt to reserve the space for the following day, thereby circumventing the first-come, first-served system.  (RJN, Ex. 1, [LAMC §§42.15 (B)(1); (B)(2); (B)(4)(b); (E)(9)].)  Additionally, the hauling, setting up, and packing up of items in Designated Spaces is noisy, and the City has an interest in controlling noise levels between the hours of sunset and 9:00 a.m. for the residences adjacent to the boardwalk.  (RJN, Ex. 1, [LAMC §§42.15 (B)(4)(b); (B)(4)(h)].)  The City also has an aesthetic interest in providing visitors with a relatively clear view of the Pacific Ocean at sunset and eliminating visual clutter.  (RJN, Ex. 1, [LAMC §§42.15 (B)(4)(c); (B)(4)(g)].)  The City also has an interest in facilitating the cleaning of the boardwalk, which is made difficult if equipment and other items are placed in Designated Spaces overnight; the area needs to be free of items on the ground so that the cleaning process is not hampered by the time-consuming removal of tables, tarps, and other bulky equipment that are endemic in Designated Spaces.  Without the sunset provision, the City would be unable to achieve these important interests.

      c.    **Plaintiffs Do Not Have an Unfettered Right Under the First Amendment to Use Tables in Designated Spaces Between the Hours of Sunset and 9:00 a.m.**

Notwithstanding that after sunset Plaintiffs have ample alternative channels for communication at their disposal and that the sunset provision serves many important government interests, Plaintiffs contend to have a First Amendment right to engage in political speech in a Designated Space after sunset *with a table*.  (Pls.' Opp'n to Mot. Dismiss, 8:28-9:7; 13:25-28.)  Contrary to Plaintiffs' assertion, the City may regulate the use of objects that facilitate the dissemination of First Amendment speech, such as picket signs and tables, in public forums in a content-neutral manner.  *See Foti*, *supra*,

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

146 F.3d 629.  And this is true even if the speaker believes the regulation is restricting her preferred manner of communication.  In *Foti*, the Ninth Circuit was unmoved by the protestors' argument that they had a First Amendment right to advocate their cause by selecting what they believed to be the most effective means for so doing, which is nearly identical to the argument Plaintiffs make here.  *Id*. at 641.  The protestors in *Foti* claimed that picketing with a fifteen square foot sign with a picture of an aborted fetus combined with another fifteen square foot sign with a written anti-abortion message was the most effective method of conveying their message and that they had a right to protest using that method.  *Id*.  The Ninth Circuit disagreed, reasoning that the protestors still had the right to choose a particular *means or avenue* of speech – picketing – to advocate their cause in lieu of other avenues.  *Id*.  "This is not the same as saying that [the protestors] have a First Amendment right to dictate the manner in which they convey their message within their chosen avenue.  Government may regulate the *manner* of speech in a content-neutral way but may not infringe on an individual's right to select the *means* of speech."  *Id*. at 641-42.

Additionally, the sunset provision's restriction on tables is distinguishable from the City of Las Vegas's content-based prohibition on erecting tables that the Ninth Circuit held was unconstitutional under the Equal Protection Clause.  *See ACLU v. City of Las Vegas*, 466 F.3d 784, 799 (9th Cir. 2006).  In that case, which was cited in Plaintiffs' opposition, the City of Las Vegas prohibited erecting tables in the "Fremont Street Experience," a revitalized downtown area.  *Id*. at 788.  The ban contained an explicit exemption for labor-related activities, such as union organizing, which was in violation of the Equal Protection Clause.  *Id*. at 789.  Importantly, the Ninth Circuit declined to hold that the tabling ordinance was facially unconstitutional.  *Id*. at 800.  The Ninth Circuit reasoned that although tables are often used in association with core expressive activities, the ordinance, on its face, did not regulate expressive activity.  *Id*.

Furthermore, contrary to Plaintiffs' assertion, the sunset provision is distinguishable from the unconstitutional requirement in *Foti* that a picketer continue

8

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT

moving.  *See Foti*, *supra*, 146 F.3d at 642.  The requirement that a picketer continue moving was ruled to be unconstitutional because it was not narrowly tailored to the city's interests.  *Id.*  The Ninth Circuit reasoned that "[r]equiring picketers to shuffle back and forth does not contribute to safe and convenient circulation on sidewalks; presumably, pedestrians could better negotiate around a stationary picketer than one who is walking back and forth.  More importantly, the City offers no reason why only persons holding signs are required to keep moving. Protestors who shout, leaflet, or carry various props may stand still; so too may any large group of pedestrians on the sidewalk. A peaceful picketer carrying a sign creates no more of an obstacle than a picketer carrying a cross or a pedestrian waiting for a bus."  *Id*.

But, here, Plaintiffs, no matter the *means or avenue* of political speech they are engaging in, e.g., picketing, leafleting, etc., may remain stationary in the Designated Space after sunset as long as they do not put any items on the ground.  Unlike the Menlo Park requirement for picketers, the sunset provision does not single out a specific type of protestor for disparate treatment.  No matter who the speaker is or what she is saying or doing, she cannot set down items in a Designated Space between the hours of sunset and 9:00 a.m.  But that is all; there is no other limitations applicable to the Designated Space after sunset.  There is no requirement that Plaintiffs constantly move when outside of the Designated and Non-Designated Spaces.  Certainly, given the nature of political speech, Plaintiffs will need to stop from time to time to discuss issues at length, hand out leaflets, and obtain donations from passersby, and nothing in LAMC section 42.15 prohibits this conduct.

Finally, the First Amendment analysis set forth above is consistent with this Court's decision in *Dowd* and it is dispositive with regard to the sunset provision's facial validity.  *See Dowd v. City of Los Angeles*, 2013 U.S. Dist. LEXIS 111435 (August 7, 2013).  Although certain equipment may facilitate speech, the City may still regulate its use in public forums as long as the regulation is content-neutral and narrowly tailored to serve significant government interests.  The sunset provision meets

9

this intermediate scrutiny standard.  The fact that Plaintiffs dislike or disagree with some of the aspects of the ordinance does not amount to a constitutional violation. Plaintiffs do not have an absolute right under the First Amendment to use a table on the Venice Boardwalk to facilitate the dissemination of protected speech, and none of the cases cited in their opposition papers stand for such a proposition.

**B.    LAMC §42.15 Does Not Prohibit Expressive Activity or Soliciting Donations.**

As the City's Motion and the ordinance itself make clear, there is no prohibition on expressive activities or the solicitation of donations, content-based or otherwise. (Defendant's Motion to Dismiss, pp. 4-5,7-9; RJN, Ex. 1 [LAMC §§42.15 (B)(2); (D)(1); (E)(9); (F)(1)(a); (F)(1)(b); (A)(6); (A)(20)].)  Plaintiffs misquote the ordinance in their opposition.  The ordinance does not "characterize the most fundamental free speech rights as vending."  In fact, the latest iteration of the ordinance was meant to reduce the commercial flea market atmosphere and encourage the very free speech activities that Plaintiffs wish to engage in.  (RJN, Ex. 1 [LAMC § 42.15(B)(2)].)  Nor does the ordinance characterize "vending" as the dissemination of "expressive items: newspapers, leaflets, pamphlets…"  The ordinances states that "persons can engage in traditional expressive speech and petitioning activities, and can Vend the following expressive items: newspapers, leaflets, pamphlets, bumper stickers, patches and/or buttons."  (RJN, Ex. 1 [LAMC § 42.15(D)(1)].)

**C.    Plaintiffs Do Not Allege a Cognizable As-Applied Challenge.**

Plaintiffs admit that on at least two occasions they used a table in a Designated Space after sunset.  This conduct is in plain violation of the sunset provision.  But, according to Plaintiffs, on those two occasions LAPD officers wrongly accused of them of "vending" and instructed that they could engage in such activities on the middle of the boardwalk in a mobile fashion.  It appears that the officers either misunderstood what Plaintiffs were doing or misstated the nature of Plaintiffs' violation of the law.  In either case, however, the officers were correct that Plaintiffs were violating LAMC section 42.15.

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Contrary to Plaintiffs' assertions, however, such a scenario does not constitute an as-applied challenge. An as-applied challenge to an ordinance asserts that the ordinance is unconstitutional as applied to a particular plaintiff's speech activity, even though the ordinance may be valid as applied to other parties. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). Such a challenge does not implicate the enforcement of the ordinance as against third parties, but rather asserts that the application of the ordinance is discriminatorily enforced against a particular plaintiff amounting to "viewpoint discrimination in violation of the First Amendment." *Foti*, *supra*, 146 F.3d at 635.

Here, Plaintiffs have presented inadequate allegations of discriminatory enforcement of the ordinance to establish the unconstitutionality of the ordinance as applied. There is no allegation that the officers were singling out Plaintiffs, seeking to suppress their viewpoint, or discriminating against Plaintiffs in anyway. In fact, according to Plaintiffs, on both occasions the officers informed them that they could continue their advocacy efforts on the boardwalk, but only in a different manner.

Furthermore, this situation is distinguishable from *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015), where the Ninth Circuit revived an as-applied challenge that had been disposed of by the district court. In *CPR for Skid Row*, the Ninth Circuit found that Penal Code section 403, which had been enforced against protestors in Skid Row, did not properly apply to the plaintiffs' protest activity in the first place. *Id*. at 1111. But, here, it is undisputed that Plaintiffs were in violation of LAMC section 42.15. As such, Plaintiffs have failed to allege a cognizable as-applied challenge.

**D.      Plaintiffs Have Not Alleged a Cognizable Claim Under the Bane Act**

Section 52.1 requires two elements for there to be a violation: (1) an interference with the exercise of a right (2) by threat, intimidation or coercion. The state Supreme Court in both *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) and *Jones v. Kmart Corp.,* 17 Cal.4th 329 (1998) view section 52.1 as providing a remedy "for

'certain misconduct that interferes with' federal or state laws, *if accompanied by threats, intimidation or coercion.*"  *Venegas, supra,* at 847, citing *Jones, supra,* at 338 (emphasis added).  Here, Plaintiffs allege interference with their First Amendment rights, but fail to allege any accompanying "threat, intimidation or coercion" beyond that very interference.  Without more, the motion to dismiss this cause of action should be granted.

Plaintiffs' Opposition argues that *McKibben v. McMahon*, No. EDVC 14-02171 JGB (SPx), slip op. *4, 2015 WL 10382396 (C.D. Cal Apr. 17, 2015) "applied the correct test to uphold a §52.1 claim, distinguishing *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67 (2015) in an unlawful seizure case and holding that defendants' coercive choice is the 'more' that separates this case from *Allen.*" Opp. at 21:14-17. The problem for Plaintiffs is that the plaintiff in *McKibben* alleged an underlying constitutional violation of disparate treatment, *plus* the coercive element of forcing him into an untenable choice.  *McKibben, supra,* 2015 U.S. Dist. LEXIS 176696 at *11. Here, Plaintiffs do not allege an underlying constitutional violation that is separate from police officers allegedly wrongly telling them they were restricted from soliciting donations from a table in a Designated Space after sunset.

And section 52.1 liability can only be found where there is a "showing of coercion *independent from the coercion inherent in the wrong itself.*"  *Shoyoe v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 (emphasis added).   As *McKibben* notes, a number of district courts have read *Shoyoye* as imposing a distinction between intentional conduct — which is actionable — and unintentional conduct — which is not.  And in *McKibben*, the court found that plaintiffs' allegation that the defendants made a conscious, voluntary choice to subject inmates who self-identify as gay, bisexual, or transgender ("GBT") to worse conditions than non-GBT inmates is, by itself, arguably sufficient to distinguish *Shoyoye.  McKibben, supra*, 2015 U.S. Dist. LEXIS 176696 at *9-10.

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT

Here, Plaintiffs allege no independent coercion from that which was used to allegedly restrict her rights in the first instance.  Put differently, the threat of citation should Plaintiffs wish to continue distributing literature and accepting donations from a table in a Designated Space on the west side of the Boardwalk after sunset is the very act which forms the alleged violation of the Constitutional right to free speech; these acts are the very same that Plaintiffs claim constitute the "threat, intimidation or coercion" under section 52.1.  This is insufficient as a matter of law; and the motion to dismiss should be granted.

At most, then, the facts alleged show only negligence on the part of the officers by incorrectly telling Plaintiffs that tehy could not "vend" from a table in a Designated Space after sunset.  Negligence cannot rise to the level of a violation of Section 52.1, which requires intentional conduct.  *See* Cal. Civ. Code § 52.1(a).  Plaintiffs allege facts that, at best, show the erroneous explanation of the Los Angeles Municipal Code.  Plaintiffs do not have a constitutional right to express themselves from a table at all times, and there is no interpretation of section 42.15 that entirely prohibits Plaintiffs from being in a Designated Space on the west side of the Boardwalk after sunset.

### III.    CONCLUSION

For all these reasons, including the reasons given in the City's moving papers, the motion to dismiss should be granted.


Dated:  July 18, 2016

MICHAEL N. FEUER, City Attorney
THOMAS H. PETERS, Chief Deputy City Attorney


By: _____/s/_____
Sara Ugaz, Deputy City Attorney
Attorneys for Defendant
CITY OF LOS ANGELES

DEFENDANT CITY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT