O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VENICE JUSTICE COMMITTEE, an unincorporated association; PEGGY KENNEDY, an individual, | ) ) ) ) | Case No. CV 16-01115 DDP (SSx) |
| | ) | **ORDER RE: MOTION TO DISMISS** |
| | ) | [Dkt. 13] |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CITY OF LOS ANGELES, | ) ) | |
| Defendants. | ) | |
| _____ | | |

Before the court is Defendant City of Los Angeles's (the "City") Motion to Dismiss Plaintiffs Venice Justice Committee and Peggy Kennedy's Complaint. (Dkt. 13.) After hearing oral argument and considering the parties' submissions, the court adopts the following Order.

**I. BACKGROUND**

   **A.   Los Angeles Municipal Code section 42.15**

   The Venice Beach Boardwalk (the "Boardwalk") is a major tourist attraction in the City of Los Angeles that has long served as a traditional public forum for free speech activities. (See Los Angeles Municipal Code section 42.15 ("LAMC § 42.15"), attached as

Exhibit 1 to Defendant's Request for Judicial Notice.) In 2004, the City of Los Angeles passed LAMC § 42.15, which imposed certain time, place, and manner restrictions on activities on the Boardwalk. LAMC § 42.15(B)(3). The goal of the Ordinance was to preserve the unique historic character of the Boardwalk as a forum for free speech, maintain its status as a tourist attraction, protect commercial life on the Boardwalk, and ensure safety. Id.

Over the years, the City has amended the provision on numerous occasions, including in response to First Amendment challenges. See, e.g., Dowd v. City of Los Angeles, No. CV 09-06731 DDP SSX, 2013 WL 4039043, at *1 (C.D. Cal. Aug. 7, 2013). At issue in this case is the most recent iteration of LAMC § 42.15, which was amended in 2014. LAMC § 42.15 delineates the Boardwalk into Designated Spaces, Pagoda, and Recreation Areas. LAMC §§ 42.15(D)-(F). The remainder of the space is considered "undesignated Space." Id. This case concerns only the restrictions pertaining to the Designated Spaces and undesignated Spaces.

In Designated Spaces, "[p]ersons can engage in traditional expressive speech and petitioning activities, and can Vend the following expressive items: newspapers, leaflets, pamphlets, bumper stickers, patches, and/or buttons" and engage in other expressive activities not relevant here. Id. § 42.15(D)(1). The Ordinance defines "vending" as "[t]o sell, offer for sale, expose or display for sale, solicit offers to purchase, or to barter Food, Goods or Merchandise, or services in any area from a stand, table . . . or to require someone to pay a fee or to set, negotiate, or establish a fee before providing Food, Goods or Merchandise, or services, even if characterized by the Vendor as a Donation." Id. §

42.15(A)(20). The Ordinance also includes a "Sunset Provision," which prohibits "set[ting] up or set[ting] down items in, tak[ing] down items from or block[ing], or attempt[ing] to reserve a Designated Space between Sunset and 9:00 a.m." Id. § 42.15(E)(9).

As for undesignated spaces, the Ordinance distinguishes between those on the west side of the Boardwalk and those on the east side. In the undesignated area on the west side, also called the ocean-side, a person may engage in all the same activities as in Designated Spaces, except vending, and may "set up a display table, easel, stand, equipment or other furniture . . . subject to reasonable size and height restrictions . . . provided the equipment or activity associated with the equipment does not materially impede or obstruct pedestrian or vehicular traffic or areas designed for emergency ingress or egress." Id. § 42.15(F)(1)(b). By contrast, in the undesignated area on the east side, a person may engage in all the same activities as in Designated Spaces (including vending) but may not "set up a display table, easel, stand, equipment or other furniture, use a Pushcart or other vehicle" at any time. Id. § 42.15(F)(1)(a).

While not squarely at issue in this case, the Ordinance further provides that "[n]o Person shall use or obstruct access to any City-owned or maintained property or equipment, including, but not limited to, street furniture, benches, planters, trash receptacles, Pagodas or other structures or equipment installed on public property, for Vending, Performing, or display of anything whatsoever." Id. § 42.15(G). As a result of these combined limitations, Plaintiffs allege that the majority of the remaining undesignated spaces available for expressive activity are "only 30

1    inches or 60 inches wide and 60 inches." (Plaintiffs' Opposition to

2    Motion to Dismiss 7.)

3        **B.    Factual Background**

4        Plaintiff Peggy Kennedy is a co-founder of the Venice Justice

5    Committee (VJC). (Compl. ¶ 13.) The VJC advocates against civil and

6    human rights violations in the Venice area with a focus on the

7    interactions of the police and the homeless community. (Id. ¶ 12.)

8    This case arises out of two incidents that occurred on the

9    Boardwalk when Plaintiff Kennedy was involved in advocacy efforts

10   related to the VJC. (Id. ¶¶ 24-27.)

11       The first incident occurred on February 2, 2015. (Id. ¶ 24.)

12   On that day, shortly after sunset, Plaintiffs allege that Ms.

13   Kennedy set up a small folding table in a Designated Space to

14   display signs, hold petitions, collect donations, and provide

15   informational pamphlets. (Id. ¶¶ 24-25.) Soon thereafter,

16   Plaintiffs claim that two LAPD officers approached Ms. Kennedy and

17   informed her that she could not "vend" in a Designated Space after

18   sunset. (Id. ¶ 25.) Ms. Kennedy responded that she was not vending

19   anything but was instead collecting donations from individuals who

20   wanted to support the work of the VJC. (Id.) The officers then

21   allegedly explained to Ms. Kennedy that soliciting donations

22   constituted vending. (Id. ¶ 26.) They also told her that she would

23   be issued a citation if she did not immediately stop seeking

24   donations. (Id.) Ms. Kennedy acquiesced and left the space. (Id.)

25       According to Plaintiffs, Ms. Kennedy did not attempt to set up

26   another table on the Boardwalk for several months. (Id. ¶ 27.) The

27   second incident occurred on September 25, 2015 when Ms. Kennedy

28   again set up a table in a Designated Space after sunset. (Id. ¶

4

27.) On this occasion, Ms. Kennedy had placed a sign on the table that read, "Stop Killing of Homeless." (Id.) She also set out informational pamphlets, petitions, a flyer about an upcoming march, and a cardboard box to collect donations. (Id. ¶¶ 27, 29.) Approximately fifteen minutes after sunset, two LAPD officers approached Ms. Kennedy and informed her that she could not set up in a vending space after sunset. (Id. ¶ 30.) The officers explained that, while she could continue to engage in expressive activity, including collection petition signatures and passing out flyers, she would need to keep moving up and down the Boardwalk. (Id.) The officers allegedly threatened her with a citation if she remained. (Id.) Ms. Kennedy again left the Boardwalk. (Id.) Plaintiffs also allege that it was not feasible to engage the public, carry VJC's literature, and solicit donations if she had to keep moving at all times. (Id.)

In response to these incidents, Plaintiffs brought this suit seeking declaratory relief that Plaintiffs' constitutional rights were violated as a result of the LAPD officer's actions, declaratory relief that requesting donations to support political does not constitute vending, and an injunction against the City from enforcing the Sunset Provision of LAMC § 42.15 so as to prohibit all core political speech on the Boardwalk after sunset.

**II. LEGAL STANDARD**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must

1  "accept as true all allegations of material fact and must construe
2  those facts in the light most favorable to the plaintiff." <u>Resnick</u>
3  <u>v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint
4  need not include "detailed factual allegations," it must offer
5  "more than an unadorned, the-defendant-unlawfully-harmed-me
6  accusation." <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or
7  allegations that are no more than a statement of a legal conclusion
8  "are not entitled to the assumption of truth." <u>Id.</u> at 679.  In
9  other words, a pleading that merely offers "labels and
10 conclusions," a "formulaic recitation of the elements," or "naked
11 assertions" will not be sufficient to state a claim upon which
12 relief can be granted.  <u>Id.</u> at 678 (citations and internal
13 quotation marks omitted).

14     "When there are well-pleaded factual allegations, a court should
15 assume their veracity and then determine whether they plausibly
16 give rise to an entitlement of relief." <u>Id.</u> at 679.  Plaintiffs
17 must allege "plausible grounds to infer" that their claims rise
18 "above the speculative level." <u>Twombly</u>, 550 U.S. at 555.
19 "Determining whether a complaint states a plausible claim for
20 relief" is a "context-specific task that requires the reviewing
21 court to draw on its judicial experience and common sense." <u>Iqbal</u>,
22 556 U.S. at 679.

23 **III. DISCUSSION**

24     **A.   Activities Prohibited by LAMC § 42.15**

25     Before determining whether LAMC § 42.15 survives Plaintiffs'
26 constitutional challenge, the court must first determine what
27 activities are specifically prohibited by the Ordinance. In their
28 Complaint, Plaintiffs allege that LAMC § 42.15 prohibits "all core

political speech on the Boardwalk after sunset." (Compl., "Prayer for Relief" at ¶ 3.) Plaintiffs also allege that the City improperly conflates "'soliciting' for political donations with 'vending'" and thus interferes with fundamental free speech rights. (<u>Id.</u> ¶ 33; Opp'n 6.) Defendant contends these allegations fail because they are premised on a misreading of the Ordinance. (Defendant's Motion to Dismiss 6.) To the extent that Plaintiffs raise a facial challenge to LAMC § 42.15's prohibition on expressive activity or solicitation, Defendant argues that the claim must fail because the Ordinance does not prohibit either expressive activity or solicitation of donations on the Boardwalk, even after sunset. (<u>Id.</u>) On its face, the only relevant activity prohibited by the Ordinance is "tabling" after sunset. (<u>Id.</u>)

In support of its reading of the statute, Defendant notes that Subsection (D)(1) of the ordinance provides that, in Designated Spaces, "[p]ersons can engage in traditional expressive speech and petitioning activities, and can Vend the following expressive items: newspapers, leaflets, pamphlets, bumper stickers, patches, and/or buttons." LAMC § 42.15(D)(1). Likewise, in undesignated spaces on both the east and west side, individuals can engage in the same traditional expressive speech and petitioning activities. <u>See</u> LAMC § 42.15(F)(1). The only limits in the undesignated areas are that tables are not allowed on the east side and vending is not permitted on the west side. <u>Id.</u> Moreover, the Sunset Provisions, which applies only to Designated Spaces, does not prohibit any sort of expressive activity but only states that "[n]o person shall set up or set down items in, take down items

1   from or block, or attempt to reserve a Designated Space between

2   Sunset and 9:00 am." Id. § 42.15(E)(9).

3        Given these provisions, it appears Defendants have a better

4   reading of the statute. On its face, the Ordinance does not seem to

5   prohibit all expressive activity or political solicitation after

6   sunset. The question that remains, however, is whether LAMC §

7   42.15's prohibition on vending impedes expressive activity such as

8   the solicitation of donations. According to the Ordinance,

9   "vending" is defined as "requir[ing] someone to pay a fee . . .

10  before providing Food, Goods or Merchandise, or services, even if

11  characterized by the Vendor as a Donation." Id, § 42.15(A)(20). The

12  Ordinance also separately defines "Donation" as a "gift; a

13  voluntary act which is not required and does not require anything

14  in return." Id. § 42.15(A)(6). Given these definitions, and given

15  Plaintiffs allegations that they "were not selling or vending

16  anything" and that they "did not provide any food, goods,

17  merchandise, or services in exchange for any donations," the

18  solicitation of funds for the VJC does not constitute "vending."

19  (Compl. ¶¶ 25, 29.)

20       In their Opposition, Plaintiffs do not challenge this reading

21  of the Ordinance but instead focus on the fact that they "were

22  directed by the LAPD to cease even "passive" solicitation of

23  donations on a public sidewalk after sunset." (Opp'n 19.) Insofar

24  as this order to cease solicitation was an attempt by the officers

25  to enforce the Sunset Provision, it will be discussed in the next

26  section. However, Plaintiffs also argue that this act provides the

27  predicate to raise an as-applied challenge to LAMC § 42.15's

28  alleged restriction on soliciting donations. (Opp'n 17.)

1    Defendant responds that Plaintiffs' allegation that LAPD
2  officers either misunderstood or incorrectly applied the Ordinance
3  against Plaintiffs is insufficient to state a claim for an as-
4  applied First Amendment challenge. (Reply in Support of Defendant's
5  Motion to Dismiss 11.) As Defendant correctly notes, an as-applied
6  challenge requires an allegation that a law is unconstitutional as
7  applied to a particular plaintiff's speech activity, even though it
8  may be valid as applied to other parties. (Opp'n 11 (citing Members
9  of City Council v. Taxpayers for Vincent, 466 U.S. 789, 796
10  (1984)).) Further, such challenges typically require an allegation
11  that "discriminatory enforcement of a speech restriction amounts to
12  viewpoint discrimination in violation of the First Amendment."
13  Desert Outdoor Adver., Inc. v. City of Oakland, 506 F.3d 798, 805
14  (9th Cir. 2007). Here, there is no allegation that Plaintiffs were
15  being singled out due to their viewpoint or subject to
16  discrimination in any manner. Indeed, on both occasions officers
17  gave Plaintiffs the option of continuing their advocacy so long as
18  they did not set down a table.

19    Based on the allegations in the Complaint, the court concludes
20  that Plaintiffs fail to state a claim that LAMC § 42.15 prohibits
21  expressive activity or solicitation of donations either on its face
22  or as applied to Plaintiffs. Furthermore, given that the Ordinance
23  permits Plaintiffs to engage in expressive activity and solicit
24  donations on the Boardwalk at any time the Boardwalk is open, which
25  Defendants acknowledge in their present filings, the court further
26  finds that granting leave to amend as to the solicitation and
27  expressive activity claims would be futile and thus DISMISSES them
28  with prejudice.

**B.     Sunset Provision Claim**

Plaintiffs' remaining facial challenge to LAMC § 42.15 centers on the "Sunset Provision" of the Ordinance. As noted above, the Sunset Provision provides that "[n]o person shall set up or set down items in, take down items from or block, or attempt to reserve a Designated Space between Sunset and 9:00 am." Id. § 42.15(E)(9). The question before the court is whether Plaintiffs' constitutional challenge to the Sunset Provision survives the Motion to Dismiss.

As an initial matter, Defendant contends that Plaintiffs' claim must be dismissed pursuant to this Court's prior Order in Dowd v. City of Los Angeles, No. CV 09-06731 DDP (SSx), 2013 WL 4039043 (C.D. Cal. Aug. 7, 2013). In Dowd, this Court considered the constitutionality of a prior iteration of LAMC § 42.15, which prohibited all activity in designated spaces between sunset and 9:00 a.m. Dowd, 2013 WL 4039043, at *14. On a motion for summary judgment, this Court concluded that Plaintiffs had failed to submit evidence that created a triable issue of fact whether "the requirement burdens more significantly speech than necessary and is not narrowly tailored." Id.

Defendants interpret this Court's decision in Dowd as a determination that the prior sunset provision was facially constitutional. (See Mot. 10.) Because the present Sunset Provision is less restrictive than its predecessor-it does not prohibit all activity in Designated Spaces after sunset but instead only prohibits setting down objects or attempting to reserve the space for the next morning-Defendant argues that this iteration of the Sunset Provision must also survive constitutional scrutiny. (Id.)

Contrary to Defendant's contention, <u>Dowd</u> does not control the outcome in this case. <u>Dowd</u> was decided on cross-motions for summary judgment. <u>Dowd</u>, 2013 WL 4039043, at *1. The precise legal question in that case was whether, in light of the evidence submitted, there was a triable issue of fact as to the narrow tailoring of the sunset provision. The court stated several times that the <u>Dowd</u> Plaintiffs "have presented no evidence creating an issue of fact" and failed to "point[] to factual evidence in the record." <u>Id.</u> at *8, *10. This does not constitute a determination that the Sunset Provision in <u>Dowd</u> was facially constitutional nor does it require dismissing the VJC's case at this juncture. Rather, the court must consider whether Plaintiffs' allegations in this case plausibly state a claim that the current Sunset Provision is not a valid time place and manner restriction.

Turning to the question at hand, it is well established that "[t]he protections afforded by the First Amendment are nowhere stronger than in streets and parks, both categorized for First Amendment purposes as traditional public fora. <u>Berger v. City of Seattle</u>, 569 F.3d 1029, 1035-36 (9th Cir. 2009) (citing <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45 (1983)). These traditional public fora "'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." <u>McCullen v. Coakley</u>, 134 S. Ct. 2518, 2529 (2014) (quoting <u>Perry Ed. Assn.</u>, 460 U.S. at 45). At the same time, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of

protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

### 1. Content-Neutrality

A speech restriction is content-neutral if it is "justified without reference to the content of the regulated speech." Clark, 468 U.S. at 293. In this case, both parties agree the "regulatory scheme for 'Designated' and 'Undesignated' spaces is accepted as content-neutral for this action." (Opp'n 9; see also Mot. 11.)

### 2. Narrow Tailoring

"A narrowly tailored time, place, or manner restriction on speech is one that does not 'burden substantially more speech than is necessary' to achieve a substantial government interest." Berger, 569 F.3d at 1041 (citing Ward, 491 U.S. at 799). While the chosen restriction "need not be the least restrictive or least intrusive means" of achieving the governmental interest, Ward, 491 U.S. at 798, "the existence of obvious, less burdensome alternatives is 'a relevant consideration in determining whether the 'fit' between ends and means is reasonable." Berger, 569 F.3d at 1041 (quoting City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417 n.13 (1993)).) In order to satisfy its burden, "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's

1   interests, not simply that the chosen route is easier." <u>McCullen</u>,

2   134 S. Ct. at 2540.

3        With regard to narrow tailoring, Defendant primarily focuses

4   on the significant government interests served by the Sunset

5   Provision. One such interest posited by Defendant is "ensur[ing]

6   the Boardwalk is clean and safe for the crowds of people that will

7   visit the following day." (Mot. 11 (citing <u>Dowd</u>, 2013 WL 4039043,

8   at *14).)[1] Defendant also notes that the Ordinance itself lays out

9   other governmental interests served by the Sunset provision. <u>See</u>

10  LAMC § 42.15(B)(4). These interests include preventing the

11  harassment of tourists, preventing altercations over limited

12  spaces, facilitating foot traffic, reducing clutter, ensuring

13  access to ingress and egress routes, protecting against the sale of

14  harmful merchandise, reducing visual clutter, and reducing noise.

15  <u>Id.</u> §§ 42.15(B)(4)(a)-(h). Defendant further argues that Sunset

16  Provision limits only one particular manner of engaging in

17  speech—via tabling—and reiterates that the Boardwalk remains open

18  to Plaintiffs "in all places and at all times" to engage in their

19  advocacy provided they are not setting up a table. (Reply 5.)

20       Plaintiffs question the validity of Defendant's assertions

21  that the Sunset Provision actually furthers any of the claimed

22  governmental interests. (Opp'n 11.) With regard to cleaning,

23  Plaintiffs note that there are areas where tables can be put down

24

_____

25       [1] Here, Defendant again relies on <u>Dowd</u> to contend that this
     court has already concluded that a sunset provision satisfies the
26   narrow tailoring requirement. We reiterate that our conclusion in
     <u>Dowd</u> was based on the fact that in that case the City presented
27   evidence of health and safety interests promoted by clearing the
     Boardwalk each evening and that the <u>Dowd</u> Plaintiffs presented no
28   countervailing evidence. It is premature to rely on that
     determination to resolve this motion.

1   at any time, thereby casting doubt on the City's contention that

2   Designated Spaces must be cleared after sunset for cleaning

3   purposes. (<u>Id.</u>)[2] Plaintiffs also argue that alternative regulations

4   such as limiting the size of tables used after sunset or limiting

5   the amount of material on the ground could minimize the impact on

6   any cleaning needs while imposing less of a burden on speech

7   activities. (<u>Id.</u>) Further, Plaintiffs note that engaging in

8   alternative means of advocacy, such walking up and down the pier

9   with materials instead of manning a table, might hinder rather than

10  advance a number of the other stated governmental interests such as

11  facilitating foot traffic, reducing harassment of tourists, and

12  limiting visual clutter. As Plaintiffs note, the Ninth Circuit had

13  reached a similar conclusion when addressing the constitutionality

14  of a provision that required picketers carrying signs on a sidewalk

15  to move continuously. <u>See</u> <u>Foti v. City of Menlo Park</u>, 146 F.3d 629,

16  633-34 (1998) ("Requiring picketers to shuffle back and forth does

17  not contribute to safe and convenient circulation on sidewalks;

18  presumably, pedestrians could better negotiate around a stationary

19  picketer than one who is walking back and forth.").

20      Ultimately, Defendant has not met its burden of demonstrating

21  that the Sunset Provision is narrowly tailored to achieve

22  substantial government interest. The City has laid out a case for

23  why the interests it seeks to promote with the Sunset Provision are

24

25      [2] The court further takes judicial notice of the fact that the

26  sun sets in the Venice Beach area as early as 4:44 PM in December
    and as late as 8:09 PM in June, raising a question about why the

27  city has elected a variable rather than fixed time for clearing the
    Boardwalk of tables. <u>See</u> <u>The Old Farmer's Almanac</u>, almanac.com

28  (2016), http:// www.almanac.com/astronomy/rise/CA/Los Angeles (last
    visited August 30, 2016); <u>see also</u> Fed. R. Evid. 201.

substantial. The goal of ensuring that the Boardwalk is clean and accessible and of ensuring more equitable access to Designated Spaces might be compelling. <u>See</u>, <u>Foti</u>, 146 F.3d at 637 ("Cities do 'have a substantial interest in protecting the aesthetic appearance of their communities by avoiding visual clutter . . . [and] in assuring safe and convenient circulation on their streets.'") (quoting <u>One World One Family Now v. City and County of Honolulu</u>, 76 F.3d 1009, 1013 (9th Cir. 1996))). But "'[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort.'" <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 950 (9th Cir. 2011) (quoting <u>Thompson v. W. States Med. Ctr.</u>, 535 U.S. 357, 373 (2002)). The Ninth Circuit has previously held that "the erection of tables in a public forum is expressive activity protected by our Constitution to the extent that the tables facilitate the dissemination of First Amendment speech." <u>A.C.L.U. of Nevada v. City of Las Vegas</u>, 466 F.3d 784, 799 (9th Cir. 2006). Plaintiffs have adequately alleged that they seek to use tables on the Boardwalk after sunset for precisely this purpose and that the City's interference with this First Amendment right is not narrowly tailored. Thus, the court finds that Defendant has not met its burden on the narrow tailoring prong at the Motion to Dismiss stage.

### 3. Alternative Channels of Expression

Given the court's determination with regard to the narrow tailoring requirement, the court could conclude its First Amendment analysis of the Sunset Provision but, out of an abundance of caution, it examines the alternative channels of expression prong. As noted above, "the government may impose reasonable restrictions

1   on the time, place, or manner of protected speech, provided the

2   restrictions . . . leave open ample alternative channels for

3   communication of information." <u>Ward</u>, 491 U.S. at 791 (internal

4   quotations omitted). "[T]he burden of proving alternative avenues

5   of communication rests on [the City]." <u>Lim v. City of Long Beach</u>,

6   217 F.3d 1050, 1054 (9th Cir. 2000) (collecting cases).

7        Defendant argues that the Sunset Provision leaves open a

8   number of alternative channels of communication. (Mot. 12.)

9   Specifically, Plaintiffs can remain in a designated space after

10  Sunset provided they do not set up a table or attempt to reserve

11  the space for the following morning, they can continue their

12  advocacy while walking around the Boardwalk, they can set up a

13  table of "reasonable size and height" in certain undesignated

14  spaces, and they can engage in their preferred method of

15  communication prior to Sunset. (Opp'n 12; Reply 8-9.)

16       Plaintiff responds that the alternative channels of

17  communication are inadequate for three reasons. First, Plaintiffs

18  contend that the combined restrictions of LAMC § 42.15 relegate

19  Plaintiffs to low-traffic areas of the Boardwalk, thus impeding the

20  efficacy of Plaintiffs' advocacy. (Opp'n 15-16.) Second, Plaintiffs

21  contend that the alternative of leafleting while moving up and down

22  the Boardwalk prevents them from engaging in their preferred mode

23  of advocacy: "one-on-one communication." (Opp'n 16.) Plaintiffs

24  also note the Supreme Court's recent reiteration that "'one-on-one

25  communication' is 'the most effective, fundamental, and perhaps

26  economical avenue of political discourse.'" <u>McCullen</u>, 134 S. Ct. at

27  2536 (quoting <u>Meyer v. Grant</u>, 486 U.S. 414, 424 (1988)). Third,

28  Plaintiffs contend that tabling is more versatile and effective

form of advocacy than the City's proposed alternatives. (Opp'n 16-17 (citing <u>ACLU of Nevada</u>, 333 F.3d at 1108 n.15 ("[T]he use of a table may convey a message by giving the organization the appearance of greater stability and resources than that projected by a lone, roaming leafletter.")).)

As with narrow tailoring, Defendant has not carried its burden on the ample alternative channels for expression prong. Plaintiffs have raised a number of fact-intensive allegations regarding why the alternative means of communication are less effective and may result in Plaintiffs being unable to advocate near particularly desirable locations. (<u>See</u> Opp'n 15 (explaining that there are no spaces within several bocks of the Cadillac Hotel, the site where a homeless man died about which Plaintiffs are trying to raise awareness).) "[W]hile the First Amendment does not guarantee a speaker the right to any particular form of expression," <u>McCullen</u>, 134 S. Ct. at 2536, "[a]n alternative is not ample if the speaker is not permitted to reach the intended audience." <u>Berger</u>, 569 F.3d at 1049. Additional factual development is required to determine whether the proposed alternative means of communication are indeed adequate. Based on Plaintiffs' allegations, the court DENIES Defendant's Motion to Dismiss Plaintiffs' challenge to the Sunset Provision.

**C.   Cal. Civ. Code § 52.1: Bane Act Violations**

"California's Bane Act, Civil Code § 52.1, provides that a person 'whose exercise or enjoyment' of constitutional rights has been interfered with 'by threats, intimidation, or coercion' may bring a civil action for damages and injunctive relief. The essence of such a claim is that 'the defendant, by the specified improper

1   means . . . tried to or did prevent the plaintiff from doing

2   something he or she had the right to do under the law or force the

3   plaintiff to do something he or she was not required to do.'"

4   Boarman v. Cnty. of Sacramento, 55 F. Supp. 3d 1271, 1287 (E.D.

5   Cal. 2014) (quoting Austin B. v. Escondido Union Sch. Dist., 149

6   Cal. App. 4th 860, 883 (2007)). The key element in Bane Act cases

7   is "the element of threat, intimidation, or coercion." Shoyoye v.

8   Cnty. of L.A., 203 Cal. App. 4th 947, 959 (2012). "The act of

9   interference with a constitutional right must itself be deliberate

10  or spiteful." Id. "The statute requires a showing of coercion

11  independent from the coercion inherent in the wrongful detention

12  [or other tort] itself." Id.

13      Defendant argues that Plaintiffs fail to satisfy the first

14  element of a Bane Act violation because the LAPD officer's actions

15  did not interfere with a constitutional right. (Mot. 14.) Given the

16  court's conclusion that Plaintiffs' First Amendment claims

17  regarding the Sunset Provision survive the Motion to Dismiss, this

18  particular response is unavailing. Defendant also argues that the

19  allegations in the Complaint regarding the LAPD officers' actions

20  do not satisfy the Bane Act's requirement of an independent act of

21  coercion or intimidation. According to the Complaint, on one

22  occasion, the officers "threatened Ms. Kennedy with a citation if

23  she did not immediately stop seeking donations," and, on another

24  occasion, the officers "threatened Ms. Kennedy with a citation

25  unless she acquiesced" by leaving the designated space where she

26  had set down materials after sunset. (Compl. ¶¶ 26, 30.) Given that

27  "wrongful arrest or detention, without more, does not satisfy [the

28  Bane Act]" under California law, Allen v. City of Sacramento, 234

Cal. App. 4th 41, 69 (2015); see also <u>Lyall v. City of L.A.</u>, 807
F.3d 1178, 1196 (9th Cir. 2015) (explaining that a Bane Act
violation requires allegations of threats, coercion, or
intimidation "beyond the coercion inherent in a detention or
search"), Defendant contends that the threat of an arrest to
enforce the Ordinance is also insufficient barring additional
coercion.

Plaintiffs respond that <u>Allen</u> does not stand for the
proposition that a threat of arrest or citation can never satisfy
the threat, coercion, or intimidation requirement "where the
underlying constitutional violations do not require an arrest as an
element of the violation." (Opp'n 20-21.) Likewise, Plaintiffs
attempt to distinguish <u>Lyall</u> on the grounds that the holding only
applies to search and seizure cases. (Opp'n 21.) Finally,
Plaintiffs reference language from <u>McKibben v. McMahon</u>, No. EDVC
14-02171 JGB (SPx), 2015 WL 10382396, *4 (C.D. Cal. Apr. 17, 2015)
for the proposition that the coercion element is met when
individuals are subject to a "coercive choice." (Opp'n 21.)

Here, Plaintiffs have failed to allege that there was
"something more" than the threat of an allegedly unlawful arrest
required to satisfy the coercion element. <u>Allen v. City of
Sacramento</u>, 234 Cal. App. 4th 41, is particularly instructive. In
<u>Allen</u>, homeless residents brought an action challenging the
enforcement of a city ordinance that prohibited camping without a
permit. <u>Id.</u> at 46. Initially, the residents were informed about the
ordinance, and, on subsequent occasions, they were arrested and
their camping gear confiscated. <u>Id.</u> The court dismissed the Bane
Act claim because the "case involves an allegedly unlawful arrest

1  but no alleged coercion beyond the coercion inherent in any
2  arrest," and thus the coercion requirement was not satisfied. <u>Id.</u>
3  at 69.

4      By contrast, the court in <u>McKibben</u> faced a situation where
5  individuals were given the choice of self-identifying as gay,
6  bisexual, or transgender ("GBT") upon entry to prison. 2015 WL
7  10382396, at *1. Those that identified as GBT were housed in a
8  separate facility where they were subject to inferior conditions.
9  Under these circumstances, the court permitted the Bane Act to
10 proceed based on its determination that "the act of coercion here –
11 forcing Plaintiffs into an untenable choice – is conceptually
12 distinguishable from the underlying alleged constitutional
13 violation: the disparate treatment." <u>Id.</u> at *4.

14     In the present case, the facts more closely resemble <u>Allen</u>
15 than <u>McKibben</u>. Plaintiffs were not given any untenable choice.
16 Rather, the only threat alleged is the officers stating to
17 Plaintiffs that if they remained in the Designated Space, in
18 violation of the Ordinance, they would be arrested. If the actual
19 arrest of the homeless individuals who remained in an encampment
20 does not satisfy the independent coercion element, the threat to
21 arrest cannot either. While, in some sense, Plaintiffs can be said
22 to face the coercive choice between exercising speech rights they
23 may genuinely have or being arrested, the distinction is that such
24 a choice is not "independent from the coercion inherent in the
25 wrong itself" of there being a possibly unlawful Ordinance.
26 <u>Shoyoye</u>, 203 Cal. App. 4th at 959. Finally, there is no suggestion
27 in the record of any other coercion, nor is there any indication
28 that Plaintiffs might assert a separate threat if given leave to

1  amend. Thus, the court DISMISSES Plaintiffs' Bane Act claims with

2  prejudice.

3  **IV. CONCLUSION**

4       For the reasons set forth above, Defendant's Motion to Dismiss

5  is GRANTED in part and DENIED in part. The Motion is DENIED as to

6  Plaintiffs' constitutional challenge to the LAMC § 42.15's Sunset

7  Provision. The Motion is GRANTED as to Plaintiffs' remaining

8  claims, which are dismissed with prejudice.

9

10  IT IS SO ORDERED.

11

12

13  Dated:   September 9, 2016

14                                DEAN D. PREGERSON
                                  United States District Judge